[No. S136498. Feb. 19, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDRE RENE SCOTT et al., Defendants and Appellants.

COUNSEL

John Steinberg, under appointment by the Supreme Court, for Defendant and Appellant Maurice Kenney.

Cara DeVito, under appointment by the Supreme Court, for Defendant and Appellant Andre Rene Scott.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Mary Jo Graves and Michael P. Farrell, Assistant Attorneys General, Janet E. Neeley, J. Robert Jibson and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—We granted review to resolve a conflict in the Courts of Appeal concerning whether, for purposes of the offense of robbery, all employees have constructive possession of the employer's property while on duty and thus may be separate victims of a robbery of the employer's business, assuming the other elements of robbery are met as to each employee. In the present case, the Court of Appeal concluded the trial court did not err in informing the jury, in response to its question, that all employees on duty during a robbery have constructive possession of their employer's property, a conclusion in accord with the holding in *People v. Jones* (2000) 82 Cal.App.4th 485 [98 Cal.Rptr.2d 329] (*Jones*). This decision of the Court of Appeal conflicts with *People v. Frazer* (2003) 106 Cal.App.4th 1105, 1115 [131 Cal.Rptr.2d 319] (*Frazer*), which requires the jury to examine all of the circumstances in order to determine whether each "employee has sufficient representative capacity with respect to the owner of the property, so as to have express or implied authority over the property." We agree with the Court of Appeal below that *Jones* correctly states the law and, accordingly, we disapprove *Frazer*.

## I.

Defendants Andre Rene Scott and Maurice Kenney were charged with three counts of robbery based on a single incident, the early morning robbery

of a McDonald's restaurant in Sacramento. (Pen. Code, § 211.)[1] An enhancement for personal use of a firearm was alleged as to each robbery count, and each defendant also was charged with being a felon in possession of a firearm. (§§ 12022.53, subd. (b), 12021, subd. (a).) Defendant Kenney was charged with having one prior conviction and defendant Scott with having two prior convictions. (§§ 667, subds. (b)–(i), 1170.12.)

The three alleged victims were employees on duty at the restaurant that morning—Jinel Guillebeau, Diana Salazar, and Serena Wong. Evidence presented at trial established that defendants Scott and Kenney were two of the three men who participated in the robbery.[2] The three men entered the restaurant at approximately 6:15 a.m., shortly after it opened. Each wore dark clothing and a ski mask; one had a gun, and another had a rifle.

Ms. Guillebeau was working at the restaurant's drive-through window. When she saw two masked men, one with a gun, she immediately hid under the grill and remained there for the duration of the robbery. Ms. Salazar was working in the kitchen area, preparing food, when she saw the men. She observed that one of the men stood in front of the counter, holding a rifle. She hid under a table and remained there for the duration of the episode.

Ms. Wong, the manager, was working at the drive-through window. She heard Ms. Guillebeau scream, turned around, and saw a man holding a handgun. This individual directed Wong to the back of the store toward the safe. She brought him to the office and opened the safe using the combination, which she had memorized. She placed money in a bag, along with an electronic tracking device that she had been trained to place with the money in case of a robbery. Later, through the activation of the tracking device, the police located both defendants at an apartment building where defendant Scott resided.

Ms. Wong was the only employee working at the restaurant during the robbery who had access to the safe. As the shift manager, she was responsible for directing the work of others, taking care of any customer complaints, and generally overseeing the operation of the restaurant. Ms. Guillebeau's responsibilities included taking customers' orders, presenting food to customers, and working one of the cash registers. Ms. Salazar's duties involved food preparation. She did not handle money or work at a cash register.

During closing arguments, counsel for defendant Kenney argued that Ms. Guillebeau was not a victim of the robbery, because she did not

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] A third defendant also was charged in connection with the robberies, but the jury was unable to reach a verdict on the charges against him.

have constructive possession of the money stolen. Counsel argued that unlike Ms. Wong, who was responsible for everything in the restaurant, Ms. Guillebeau did not have access to the safe. The district attorney objected to that argument. At a sidebar conference, the court directed defense counsel to discontinue this line of argument. Thereafter, defense counsel concluded this portion of his argument by simply telling the jury that it would have to decide whether Ms. Guillebeau or Ms. Salazar had constructive possession of the property in the safe. In rebuttal, the district attorney argued that all three of the alleged victims were in constructive possession of the property because at the time of the robbery they were engaged in performing the responsibilities of their employment.

The jury was instructed that the crime of robbery requires, among other things, proof that a person "had possession of property of some value" and that the property was taken against the will of the person by force or fear. (See CALJIC No. 9.40.) The jury also was instructed that "[t]here are two kinds of possession: actual possession and constructive possession. Actual possession requires that a person knowingly exercise direct physical control over a thing. Constructive possession does not require actual possession but does require that a person knowingly exercise control over or the right to control a thing, either directly or through another person. One person may have possession alone, or two or more persons together may share actual or constructive possession." (See CALJIC No. 1.24.)

On the second day of deliberations, the jury returned a partial verdict, finding defendants Scott and Kenney guilty of the robbery of Ms. Wong.[3] After the jurors resumed deliberations on the remaining charges, they sent a note to the judge, asking for clarification of CALJIC No. 1.24; specifically, they inquired whether all employees have constructive possession of the company's property while on duty.

During a discussion with counsel concerning how the trial court should respond to the jury's question, the court observed that two recent appellate decisions were in conflict on this issue. The trial court noted that *Jones, supra,* 82 Cal.App.4th 485, 490–491, stands for the proposition that all employees on duty during the robbery of a business establishment constructively possess the business owner's property. The trial court believed *Jones* was better reasoned than *Frazer, supra,* 106 Cal.App.4th 1105, 1115, which requires a fact-based inquiry into the express or implied authority of each employee. Over objections from defense counsel, the trial court answered the jury's

---

[3] The jury also found true the allegation that both defendants personally had used a firearm during the robbery (§ 12022.53, subd. (b)), and found each guilty of being a felon in possession of a firearm (§ 12021, subd. (a)(1)).

question in accordance with *Jones*: "The employees of a business constructively possess the business owner's property during a robbery." Shortly thereafter, the jury found defendants Scott and Kenney guilty on the remaining robbery charges. In a bifurcated hearing, the jury also found true the allegations of defendants' prior felony convictions, making defendants eligible for sentencing under the "Three Strikes" law. (§§ 667, subds. (b)–(i), 1170.12.) Defendant Scott was sentenced to a term of 116 years eight months to life, and defendant Kenney was sentenced to a term of 30 years eight months. In an unpublished decision, the Court of Appeal affirmed the judgment rendered by the trial court and held that the trial court properly instructed the jury based upon the decision in *Jones*. We granted review to resolve the conflict between *Jones* and *Frazer*.

## II.

■ Robbery is defined in section 211 as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Robbery is a crime of violence committed against a person. (*People v. Ramos* (1982) 30 Cal.3d 553, 589 [180 Cal.Rptr. 266, 639 P.2d 908] (*Ramos*).) Robbery of a particular person has not occurred unless property was taken from the person's immediate presence and the defendant used force or fear to take the property or to prevent the person from resisting. (See CALCRIM No. 1600.)

A person from whose immediate presence property was taken by force or fear is not a robbery victim unless, additionally, he or she was in some sense in possession of the property. "It has been settled law for nearly a century that an essential element of the crime of robbery is that property be taken from the possession of the victim." (*People v. Nguyen* (2000) 24 Cal.4th 756, 762 [102 Cal.Rptr.2d 548, 14 P.3d 221] (*Nguyen*).) We affirmed the continuing validity of that principle in *Nguyen*, overruling an appellate court decision, *People v. Mai* (1994) 22 Cal.App.4th 117 [27 Cal.Rptr.2d 141], that had dispensed entirely with the requirement of possession. In *Nguyen*, we concluded that the trial court erred in instructing the jury that a visitor to the premises of a business where a robbery occurred could be the victim of the robbery based upon the taking of the business's property, even though the visitor did not " 'own, possess, [have] control of, or even have the right to possess or control the property sought by the perpetrator.' " (*Nguyen, supra*, 24 Cal.4th at p. 765.)

■ A person who owns property or who exercises direct physical control over it has possession of it, but neither ownership nor physical possession is required to establish the element of possession for the purposes of the robbery statute. (*Nguyen, supra*, 24 Cal.4th at p. 762; *People v. Miller* (1977)

18 Cal.3d 873, 880 [135 Cal.Rptr. 654, 558 P.2d 552] (*Miller*).) "[T]he theory of constructive possession has been used to expand the concept of possession to include employees and others as robbery victims." (*Nguyen, supra,* 24 Cal.4th at p. 762.) Two or more persons may be in joint constructive possession of a single item of personal property, and multiple convictions of robbery are proper if force or fear is applied to multiple victims in joint possession of the property taken. (*Ramos, supra,* 30 Cal.3d at p. 589.)[4]

As the jury was instructed in the present case, a person who has the right to control property has constructive possession of it. (CALJIC No. 1.24; see also CALCRIM No. 1600 [person possesses property "if the person has (control over it/ [or] has the right to control it)"].)[5] For constructive possession, courts have required that the alleged victim of a robbery have a "special relationship" with the owner of the property such that the victim had authority or responsibility to protect the stolen property on behalf of the owner. (E.g., *Sykes v. Superior Court* (1994) 30 Cal.App.4th 479 [35 Cal.Rptr.2d 571] (*Sykes*); *People v. Galoia* (1994) 31 Cal.App.4th 595 [37 Cal.Rptr.2d 117] (*Galoia*).) In *Sykes, supra,* 30 Cal.App.4th 479, the defendant burglarized a music store and removed a saxophone from the premises. (*Id.,* at pp. 480–481.) A security guard from a neighboring business managed to retrieve the musical instrument by chasing after the defendant. (*Ibid.*) The defendant was charged with robbing the security guard. The appellate court, reversing the trial court's denial of the defendant's motion to dismiss the robbery charge, rejected the argument that the guard was in constructive possession of the saxophone. "Constructive possession depends upon a special relationship with the owner of the property, not upon the motives of a person seeking to recover possession from a thief or burglar." (*Id.,* at p. 484.) The security guard employed by a neighboring business could not be a victim of robbery, because he was not an employee of the owner, never actually possessed the saxophone, and had no special obligation to protect the stolen property on behalf of the owner. Rather, the security guard's relationship to the music store owner "was that of a neighbor and good citizen seeking to catch a criminal." (*Ibid.*) "[G]ood motives alone cannot substitute for the

[4] *Ramos* overruled an older line of cases, including *People v. Guerin* (1972) 22 Cal.App.3d 775 [99 Cal.Rptr. 573], which held that the forcible taking of a single item from multiple victims could result in only a single conviction of robbery. (*Ramos, supra,* 30 Cal.3d at p. 589.)

[5] Both the CALJIC instruction given in this case and the current CALCRIM instruction concerning robbery define constructive possession generally in terms of control, but the CALCRIM version also includes a specific instruction pertaining to constructive possession by employees. The latter instruction is consistent with *Frazer, supra,* 106 Cal.App.4th 1105, and states: "If the facts show that the employee was a representative of the owner of the property and the employee expressly or implicitly had authority over the property, then that employee may be robbed if property of the store or business is taken by force or fear." (CALCRIM No. 1600 [optional punctuation omitted].)

special relationship needed to create a possessory interest in the goods." (*Galoia, supra*, 31 Cal.App.4th at p. 599.)

■ We have recognized that, based upon a theory of constructive possession, " 'a store employee may be the victim of a robbery even though he is not its owner and not at the moment in immediate control of the stolen property.' " (*Miller, supra*, 18 Cal.3d at p. 880, quoting *People v. Johnson* (1974) 38 Cal.App.3d 1, 9 [112 Cal.Rptr. 834].) "Robbery convictions have been upheld against contentions that janitors and night watchmen did not have a sufficient possessory interest in their employer's personal property to qualify as victims." (*Miller, supra*, 18 Cal.3d at p. 880, citing *People v. Downs* (1952) 114 Cal.App.2d 758, 765–766 [251 P.2d 369] (*Downs*); *People v. Dean* (1924) 66 Cal.App. 602, 607 [226 P. 943] (*Dean*).) In *Miller*, the defendant held up a jewelry store and shot the store's security guard twice. Thereafter, the defendant and an accomplice threatened two other employees with a gun and took jewelry from several display cases. We stated that the security guard, as well as the other employees, had "constructive possession of the property taken and could properly have been alleged to be a victim." (*Miller, supra*, at pp. 877–879, 881.)[6]

Although we have recognized instances in which a victim's status as an employee may establish the element of possession, our cases have not addressed the question whether each employee subjected to force during a robbery is in constructive possession of the owner's property solely by virtue of his or her status as an employee. As noted above, in responding to the jury's inquiry the trial court relied upon *Jones*, which concluded that "business employees—whatever their function—have sufficient representative capacity to their employer so as to be in possession of property stolen from the business owner." (*Jones, supra*, 82 Cal.App.4th at p. 491.)

In support of the argument that constructive possession analysis depends upon the particular responsibilities of the employee in question, defendants rely upon *Frazer, supra*, 106 Cal.App.4th 1105. Addressing a claim that the evidence was insufficient to establish that the nonmanagerial employees constructively possessed property taken during the robberies of two stores, the appellate court in *Frazer* concluded that a fact-based inquiry must determine "whether the circumstances indicate the employee has sufficient representative capacity with respect to the owner of the property, so as to have express or implied authority over the property." (*Id.*, at p. 1115.) Under this "standard, employee status does not alone as a matter of law establish constructive possession. Rather, the record must show indicia of express or

---

[6] See also *People v. Estes* (1983) 147 Cal.App.3d 23, 27 [194 Cal.Rptr. 909] (security guard, "[a]s the agent of the owner and a person directly responsible for the security of the items, . . . was in constructive possession of the merchandise to the same degree as a salesperson").

implied authority under the particular circumstances of the case." (*Ibid.*) To illustrate application of this standard, the court in *Frazer* suggested that, for example, a janitor might have such implied authority only if no employees with express authority over the property were present. On the other hand, a security guard might be deemed to have such implied authority, even if other employees with express authority over the property were present, because the guard is charged with protecting the premises.[7]

■ We conclude that the trial court's response to the jury, based upon the legal principle set out in *Jones, supra*, 82 Cal.App.4th 485, was correct. *Jones* is supported by a long line of California cases that have found evidence sufficient to establish that employees working at a business premises were in constructive possession of the employer's property during a robbery, based upon their status as employees and without examining whether their particular duties involved access to or control over the property stolen. Although some of these cases may stop short of declaring an unequivocal rule, they support the proposition, stated explicitly in *Jones*, that "California follows the long-standing rule that the employees of a business constructively possess the business owner's property during a robbery." (*Id.*, at p. 490.)

For example, in an early case, *Dean, supra*, 66 Cal.App. 602, the defendant and his accomplices broke into a theater safe and took the money inside. In the course of this incident, they tied up two employees who worked on the premises both as janitors and watchmen. (*Id.*, at pp. 604–605.) Rejecting the defendant's argument that there was insufficient proof that the two workers were in possession of the theater's cash, the court stated that "[w]hile these men did not own the money, nor even [know] the amount in the safe, yet they were rightfully in possession of the theater and its contents at the time of the robbery and were entitled to this possession as against the defendant." (*Id.*, at p. 607.)

Similarly, in *Downs, supra*, 114 Cal.App.2d 758, 760, the Court of Appeal upheld convictions for the robbery of two janitors. The defendant and another man entered a telephone company building and took money from a safe. When two janitors employed by the company entered the room, the robbers forced them to lie on the floor and bound them. (*Ibid.*) The defendant argued on appeal that his robbery convictions should be overturned, because the janitors did not possess the money in the safe. (*Id.*, at p. 765.) After citing

---

[7] Applying that standard, the court in *Frazer* found the evidence sufficient to support the defendant's convictions for the robberies of the nonmanagerial employees. Although those employees did not have access to a safe containing money, they did have access to cash registers and products. The decision in *Frazer* concluded that "the entire retail team could reasonably be viewed as having implied authority over whatever property was necessary to handle the sales, including the money in the safe through the manager." (*Frazer, supra*, 106 Cal.App.4th at p. 1119.)

*Dean, supra,* 66 Cal.App. 602, and several cases from other jurisdictions, the Court of Appeal concluded it was "no undue extension of the robbery statute to hold it applicable to any servant or servants left in sole occupation of the premises or particular part thereof by the employer." (*Downs,* 114 Cal.App.2d at p. 766, citing *Brooks v. The People* (1872) 49 N.Y. 436 [11-year-old girl left alone in her parent's apartment had sufficient possession of their property to support robbery conviction], *Reese v. State* (1922) 91 Tex.Crim. 457 [239 S.W. 619] [upholding conviction for robbery of a night clerk and a telegraph operator at a railway station, even though they did not have access to the safe from which money was taken], and *The State v. Adams* (1897) 58 Kan. 365, 367 [49 P. 81] ["As against the robber, a servant has the same rights, and rests under the same duty, to preserve and defend his possession of the property, that the owner has."].)

A similar result was reached in *People v. Arline* (1970) 13 Cal.App.3d 200 [91 Cal.Rptr. 520] (disapproved on other grounds in *People v. Hall* (1986) 41 Cal.3d 826, 834 [226 Cal.Rptr. 112, 718 P.2d 99]), in which the defendant threatened two service station attendants with a gun and forced them to relinquish money from a cash box. (*Arline, supra,* 13 Cal.App.3d at p. 202.) The defendant argued he was not properly charged with the robbery of one of the attendants, because only the other one had the key to the cash box at the time of the robbery. The appellate court concluded that because both were "employees of the station, and both were threatened by the robbers," both attendants were in constructive possession of the property taken. (*Ibid.*) "It is established that an attendant or employee may be the victim of a robbery even though he is not in charge or in immediate control of the items stolen at the moment." (*Ibid.,* citing *Downs, supra,* 114 Cal.App.2d 758; see also *People v. Masters* (1982) 134 Cal.App.3d 509, 519 [185 Cal.Rptr. 134] [citing *Downs,* at p. 766, in support of the conclusion that a cook and a waitress both were in constructive possession of the owner's property during the robbery of a restaurant]; *People v. Jones* (1996) 42 Cal.App.4th 1047, 1054 [50 Cal.Rptr.2d 46] ["employees such as the store truck driver . . . have sufficient representative capacity with respect to the owner of the property to be the victim of robbery"].)

The conclusion that employees have constructive possession of their employer's property when they are present during a robbery is consistent not only with this long line of cases addressing constructive possession by employee victims, but also with cases addressing constructive possession by nonemployees. As discussed above, those cases require only that there be some type of "special relationship" with the owner of the property sufficient to demonstrate that the victim had authority or responsibility to protect the stolen property on behalf of the owner. (E.g., *Galoia, supra,* 31 Cal.App.4th 595; *Sykes, supra,* 30 Cal.App.4th 479; *People v. Gordon* (1982) 136 Cal.App.3d 519 [186 Cal.Rptr. 373].) These cases do not require that the

victim have general authority to control the owner's property in other circumstances. For example, in *Gordon, supra*, 136 Cal.App.3d at page 529, the defendant pointed a pistol at the two victims in their own house, entered their adult son's bedroom, and took the son's personal property. (*Id.,* at pp. 523–524.) The Court of Appeal affirmed two robbery convictions, rejecting the defendant's argument that there was insufficient evidence to establish that the victims were in possession of their son's property. Reviewing prior cases in which various individuals were found to be robbery victims, the court in *Gordon* stated that "[i]n these cases, the courts have found the victims were responsible for protecting and preserving the property taken." (*Id.,* at p. 529.) Applying that principle, the court determined that the parents constructively possessed their adult son's personal items for the purposes of the robbery statute, because they had the "responsibility to protect goods belonging to their son who resides with them in their home." (*Ibid.*)

*People v. Gilbeaux* (2003) 111 Cal.App.4th 515, 523 [3 Cal.Rptr.3d 835], concluded that sufficient evidence supported the defendant's convictions for the robbery of two janitors who were independent contractors—not employees—of a grocery store owner. The appellate court held that the janitors were in constructive possession of the store property because "[t]hey were part of the group of workers in charge of the premises at the time of the robbery." (*Ibid.*) Although they were contract workers and had no responsibility for handling the cash, the court found that the two janitors had a special relationship with the grocery store and thus had representative capacity with respect to the grocery store sufficient for them to be in constructive possession of the property stolen. (*Ibid.*)

■ Although not every employee has the authority to exercise control over the employer's funds or other property during everyday operations of the business, any employee has, by virtue of his or her employment relationship with the employer, some implied authority, when on duty, to act on the employer's behalf to protect the employer's property when it is threatened during a robbery. "[E]mployees are custodians of the property on the business premises for the benefit of the owner/employer . . . ." (*State v. Behrens* (Ct.App. 2003) 138 Idaho 279 [61 P.3d 636, 638] [citing with approval *Jones, supra,* 82 Cal.App.4th 485].) They are "therefore in 'possession' of the property as against anyone who might attempt to steal it." (*State v. Behrens, supra,* 61 P.3d at p. 639.) An employee's authority to protect the employer's property is recognized in Civil Code section 50, which establishes the right to use "necessary force" to protect the "property of oneself, or of a wife, husband, child, parent, or other relative, or member of one's family, or of a ward, servant, *master,* or guest." (Italics added.) In other words, the employee's relationship with his or her employer constitutes a "special relationship" sufficient to establish the employee's constructive possession of the employer's property during a robbery.

Furthermore, it is reasonable to infer that the Legislature intended that all on-duty employees have constructive possession of the employer's property during a robbery, because such a rule is consistent with the culpability level of the offender and the harm done by his or her criminal conduct. As a matter of common knowledge and experience, those who commit robberies are likely to regard all employees as potential sources of resistance, and their use of threats and force against those employees is not likely to turn on fine distinctions regarding a particular employee's actual or implied authority. On-duty employees generally feel an implicit obligation to protect their employer's property, and their sense of loss and victimization when force is used against them to obtain the employer's property is unlikely to be affected by their particular responsibilities regarding the property in question.

In reaching a different conclusion, the court in *Frazer, supra*, 106 Cal.App.4th 1105, cited *People v. Guerin* (1972) 22 Cal.App.3d 775, 782 [99 Cal.Rptr. 573] (*Guerin*) (disapproved on other grounds in *Ramos, supra*, 30 Cal.3d at p. 589), as "stand[ing] for the proposition that employee status alone is not enough to give an employee constructive possession of his employer's property for purposes of supporting a separate robbery conviction." (*Frazer, supra*, 106 Cal.App.4th at p. 1114.) *Guerin* is the only published California case that reversed a robbery conviction on the ground that a particular employee was not shown to have constructive possession of the employer's property during the robbery. In *Guerin, supra*, 22 Cal.App.3d 775, the defendant was convicted of robbing four employees of a supermarket—the manager, a liquor clerk in charge of one cash register, a checker in charge of another register, and a box boy. The court concluded that the box boy did not have constructive possession of the money in the cash registers, because there was nothing "to suggest that he had any dominion or control whatsoever over any money. As to him there was no taking and, thus, no robbery." (*Id.*, at p. 782.)

Because *Guerin*'s analysis is limited to the conclusory statement just quoted and did not cite or attempt to distinguish prior cases holding that employees constructively possess their employer's property, it carries little persuasive weight. (See also *Jones, supra*, 82 Cal.App.4th at p. 491 ["*Guerin* is an anomaly in light of evolving case authority broadening the permissible range of robbery victims."]; *People v. Jones, supra*, 42 Cal.App.4th at p. 1055 ["*Guerin* is wrong and even a market box boy has sufficient representative capacity vis-à-vis the owner so as to be in 'possession' of the property stolen from the store owner."].)

The decision in *Frazer, supra*, 106 Cal.App.4th 1105, acknowledged the holdings in cases such as those discussed above, which "found employees possessed their employer's property even when the particular employees

could not personally access the stolen property because of their job functions." (*Id.*, at p. 1112.) The court in *Frazer*, however, determined that the approach to constructive possession should be reevaluated in light of two later developments in the law regarding robbery. The first development was our decision in *Nguyen, supra,* 24 Cal.4th 756, in which we concluded that possession remains an element of the crime of robbery. As observed earlier, in *Nguyen,* we overruled *People v. Mai, supra,* 22 Cal.App.4th 117, which held that a visitor to a business could be a robbery victim even if he or she was not in possession of the business's property. *Frazer* noted that *Mai* was one of the cases cited in *Jones* in support of the latter opinion's conclusion that every employee has constructive possession of his or her employer's property for purposes of the robbery statute. Nevertheless, our overruling of *Mai* does not undermine the holding in *Jones. Jones's* conclusion that, as a matter of law, each employee is in constructive possession of the employer's property does not, as *Frazer* appears to suggest, conflict with our holding in *Nguyen* that possession—actual or constructive—remains an element of the offense of robbery. That conclusion simply signifies that the prosecution may meet its burden of proving the element of possession by establishing that the alleged victim, from whose immediate presence the property was taken by force or fear, was an employee of the property owner and was on duty when the robbery took place.

The second development cited by *Frazer, supra,* 106 Cal.App.4th 1105, in support of its conclusion, was our 1982 decision in *Ramos, supra,* 30 Cal.3d 553, which held that a single taking of property from the joint possession of two victims could support two convictions of robbery. The decision in *Frazer* notes that the earlier cases concerning constructive possession "usually involved only *one* robbery count and conviction, even if there were multiple employee victims," because "[m]ultiple robbery convictions were typically sustained only if there were distinct takings from different employees." (*Frazer, supra,* 106 Cal.App.4th at p. 1112.)

The decision in *Frazer* appears to suggest that a narrower view of constructive possession became warranted after we held in *Ramos, supra,* 30 Cal.3d 553, that multiple counts of robbery could be supported by a single taking. We disagree. No policy justifies narrowing the meaning of possession merely because our decision in *Ramos* permits multiple convictions for multiple victims. As we explained in *Ramos,* "[w]hen two or more persons are in joint possession of a single item of personal property, the person attempting to unlawfully take such property must deal with all such individuals. All must be placed in fear or forced to unwillingly give up possession. To the extent that any threat may provoke resistance, and thus increase the possibility of actual physical injury, a threat accompanied by a taking of property from two victims' possession is even more likely to provoke resistance. [¶] We view the central element of the crime of robbery as the

force or fear applied to the individual victim in order to deprive him of his property. Accordingly, if force or fear is applied to two victims in joint possession of property, two convictions of robbery are proper." (*Ramos, supra,* 30 Cal.3d at p. 589.) Because robbery is an offense of violence against the person, the number of counts is limited by the number of persons against whom force or fear is used to remove the property. We see no justification for further limiting the offense by adopting a restrictive interpretation of the element of possession.

Defendants contend that the meaning of constructive possession adopted by the Court of Appeal below and in *Jones* would accord the word "possession" a broader meaning in the context of robbery than it has in the context of other offenses, such as possession of controlled substances or the illegal possession of weapons. Defendants argue that "[t]he concept of constructive possession should not turn upon whether the property in question is an illegal drug or the lawful earnings of a business." We disagree.

■ In construing a statute, we consider the words in context and interpret them in a manner that effectuates the intent of the Legislature. (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487 [30 Cal.Rptr.3d 823, 115 P.3d 98].) In the context of possession of contraband, constructive possession may be shown by establishing that the accused "maintained some control or right to control over contraband in the physical possession of another." (*People v. Rogers* (1971) 5 Cal.3d 129, 134 [95 Cal.Rptr. 601, 486 P.2d 129].) The definition and application of the concept of possession in this context involve an "inquiry into when the law may punish an individual who is exercising such a degree of intentional direction over contraband that he can be justifiably and fairly punished in the same manner as if he were indeed in actual physical possession of a controlled substance. Implementation of this policy necessarily encompasses a potentially wide variety of conduct in a wide variety of settings, all directed by such factors as the alleged offender's capacity to direct the illicit goods, the manifestation of circumstances wherein it is reasonable to infer such capacity exists and the degree of direction being exercised by the accused over the contraband." (*Armstrong v. Superior Court* (1990) 217 Cal.App.3d 535, 539 [265 Cal.Rptr. 877].)

■ In the context of the crime of robbery, the policies served by the element of possession are obviously quite different, because possession itself is not the unlawful act. As we explained in *Ramos*, the crime of robbery may be committed against any person who is in possession of the property taken, because such a person may be expected to resist the taking, and—in order to achieve the taking—the robber must place all such possessors in fear, or force them to give up possession. (*Ramos, supra,* 30 Cal.3d at p. 589.) By requiring

that the victim of a robbery have possession of the property taken, the Legislature has included as victims those persons who, because of their relationship to the property or its owner, have the right to resist the taking, and has excluded as victims those bystanders who have no greater interest in the property than any other member of the general population. It would not further the purposes of the robbery statute to require that the robbery victim have the same level of custody or control over the property that is required in order to establish that the perpetrator is guilty of possessing contraband.

### III.

For the reasons stated above, the decision rendered by the Court of Appeal, upholding the judgment of the trial court, is affirmed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.