Filed 5/31/13  P. v. Ortega CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OSCAR ALFREDO ORTEGA et al.,<br><br>    Defendants and Appellants. | D060665<br><br><br>(Super. Ct. No. SCD229618) |


APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed.

Nancy E. Olsen, under appointment by the Court of Appeal, for Defendant and Appellant Oscar Alfredo Ortega.

Martha L. McGill, under appointment by the Court of Appeal, for Defendant and Appellant Jelani Akeem Bigsby.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Oscar Alfredo Ortega and Jelani Akeem Bigsby (together defendants) guilty of four counts of robbery with personal use of a firearm, one count of burglary and four counts of assault with a semiautomatic firearm with personal use of a firearm. The trial court sentenced Ortega and Bigsby to total prison terms of 35 years and 32 years, respectively. Defendants appeal, claiming the evidence did not support their convictions on two of the robbery counts. We disagree and affirm the judgments.

FACTUAL BACKGROUND

We limit our recitation to those facts that are pertinent to resolution of defendants' claims on appeal.

Marco Ibanez, his wife, Elva Ibanez, their 18-year-old daughter, Jacqueline Ibanez, and her 19-year-old friend, Eva Gomez, lived in a home located in San Diego. (For clarity, we refer to these individuals by their first names.) On the afternoon of September 4, the home was burglarized. The burglar stole Jacqueline's and Eva's laptop computers, an envelope of money that Elva kept inside a drawer and attempted to pry open a floor safe.

The following morning, defendants entered the home while a cohort waited outside in a vehicle. Defendants, armed with semiautomatic handguns, confronted Marco and threatened to kill him if he did not give them the money from his safe. Marco put the cash from the safe into Ortega's backpack. Ortega then had Marco give him the money hidden in dresser drawers. Defendants stole about $25,000 in cash from the safe and dresser drawers.

2

In the meantime, Elva ran into the nearby bedroom shared by Jacqueline and Eva, locked the door and told them to call 911. Eva hid in the closet and called 911 from her cellular phone. Jacqueline also called 911. Bigsby broke into the room while Jacqueline was on the phone, pointed his gun at her saying, "'You better not be calling the cops.'" Bigsby motioned with his gun for Jacqueline and Elva to kneel on the floor.

At one point, Jacqueline heard Marco struggling to open the safe, so she told Bigsby that she could open the safe. When Bigsby asked Jacqueline if she could guarantee that she would be able to open the safe, her mind went blank. Eventually, Eva came out of the closet and Bigsby had her sit next to the other women as he pointed his gun at all of them. Bigsby grabbed Jacqueline's phone, Eva's phone, and another phone that was on a shelf and threw them to the floor, breaking them. When the police arrived, defendants escaped by jumping out a window.

DISCUSSION

The jury found defendants guilty of robbing Marco, Elva, Jacqueline and Eva. Defendants contend there was insufficient evidence to support their convictions on counts 3 and 4 pertaining to Jacqueline and Eva because the prosecution did not present evidence that these individuals had constructive possession of the money that Marco and Elva kept in the safe and dresser drawers.

In determining the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence from which a rational trier of fact could have found the defendants guilty beyond a reasonable doubt. (*People v. Jennings* (1991) 53 Cal.3d 334, 364.) We must

presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Before a conviction can be set aside for insufficiency of the evidence, it must clearly appear that there is insufficient evidence to support it under any hypothesis. (*People v. Johnson* (1980) 26 Cal.3d 557, 575–578.) Our opinion that the evidence could reasonably be reconciled with a finding of innocence does not warrant a reversal of the judgment. (*People v. Hill* (1998) 17 Cal.4th 800, 849.)

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) Taking property "from the possession of the victim" is an essential element of the crime. (*People v. Nguyen* (2000) 24 Cal.4th 756, 762.) Accordingly, a person must have either actual or constructive possession of the property taken to be a robbery victim. (*Id*. at p. 764.) "Actual possession requires direct physical control, whereas constructive possession can exist when a person without immediate physical control has the right to control the property, either directly or through another person." (*People v. Frazer* (2003) 106 Cal.App.4th 1105, 1111–1112.)

"[N]either ownership nor physical possession is required to establish the element of possession for the purposes of the robbery statute. [Citations.] '[T]he theory of constructive possession has been used to expand the concept of possession to include employees and others as robbery victims.' [Citation.] Two or more persons may be in joint constructive possession of a single item of personal property, and multiple convictions of robbery are proper if force or fear is applied to multiple victims in joint

4

possession of the property taken." (*People v. Scott* (2009) 45 Cal.4th 743, 749–750 (*Scott*).) Constructive possession may be established by demonstrating "some type of 'special relationship' with the owner of the property sufficient to demonstrate that the victim had authority or responsibility to protect the stolen property on behalf of the owner." (*Id*. at p. 753.) "By requiring that the victim of a robbery have possession of the property taken, the Legislature has included as victims those person who, because of their relationship to the property or its owner, have the right to resist the taking, and has excluded as victims those bystanders who have no greater interest in the property than any other member of the general population." (*Id*. at pp. 757–758.) A single taking of property, by force or fear, from the joint possession of more than one victim will support multiple robbery convictions. (*People v. Ramos* (1982) 30 Cal.3d 553, 587.)

Applying these principles here, the evidence clearly supported the robbery finding as to Jacqueline. While the evidence is not nearly as strong as to Eva, applying the substantial evidence standard, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Marshall* (1997) 15 Cal.4th 1, 34.)

Substantial evidence existed from which a reasonable jury could conclude that Jacqueline had constructive possession over the money stolen from the safe and dresser drawers. (CALCRIM No. 1600.) Namely, Jacqueline, an adult, lived at the home with her parents and had a key to the home. Jacqueline knew about the floor safe, its combination and how the safe opened, but did not know the combination by memory as she had never opened it before. Elva also told Jacqueline that she kept envelopes of

5

money in dresser drawers. Jacqueline told Bigsby that she could open the safe, but her mind "went blank" when Bigsby asked her for a "guarantee." This evidence, combined with the fact that Bigsby held Jacqueline at gunpoint, showed that Jacqueline was in constructive possession of the stolen property.

Substantial evidence also existed from which a reasonable jury could conclude that based on her special relationship with Marco and Elva, Eva had constructive possession of the stolen property because she similarly "had authority . . . to protect the stolen property on behalf of the owner." (*Scott*, *supra*, 45 Cal.4th at p. 753.) Eva was the best friend of Jacqueline and had lived with the Ibanez family for about one year to attend school. At the time of the robbery, Eva was an adult and Elva considered her to be a family member. Although there was no direct evidence presented that Eva had a key to the residence, the jury could reasonably infer that she did based on the above evidence. Similarly, there was no direct evidence that Eva knew about the safe or the money hidden in the drawers, but the jury could reasonably infer that she had such knowledge because she was present when the police investigated the burglary that occurred the day before the robbery where the burglar attempted to open the safe and stole an envelope of money that Elva kept inside a drawer.

Civil Code section 50 establishes the right to use "necessary force" to protect the "property of oneself, or of a wife, husband, child, parent, or other relative, or member of one's family, or of a ward, servant, master, *or guest*." (Italics added.) Under this statute, Eva had the authority to protect the stolen property, and thus had constructive possession of it. She actually resisted the robbery and tried to protect the property by calling 911.

6

Defendants considered Eva a threat to the completion of their crimes by keeping a gun pointed at her, along with Elva and Jacqueline. Moreover, it is well settled that multiple people may simultaneously "possess" a single item of personal property; thus, Marco and Elva's presence does not change the analysis. (*Scott*, *supra*, 45 Cal.4th at p. 750.)

Defendants' reliance on *People v. Ugalino* (2009) 174 Cal.App.4th 1060 (*Ugalino*) is misplaced as this case is distinguishable on its facts. In *Ugalino*, victims Johnson and Rider shared an apartment with several other people, when defendant and a cohort entered the apartment to purchase marijuana from Johnson, a drug dealer. (*Id*. at p. 1062.) Defendant and the cohort pointed firearms at Johnson and Rider, and defendant told Johnson, "'[Y]ou're getting jacked.'" (*Id.* at p. 1063.) Johnson fled the apartment with the drugs, and defendant followed him in pursuit. (*Ibid.*) On appeal, the court reversed defendant's conviction for attempted robbery of Rider, noting that "Rider did not have actual possession of the marijuana, and Johnson stored the marijuana locked in a safe in his bedroom." (*Id*. at p. 1065.) The court impliedly concluded that Rider did not have constructive possession of the drugs because a special relationship did not exist between him and Johnson. Namely, the *Ugalino* court noted that there was no parent-child relationship or employee relationship between Johnson and Rider, Rider did not have a key to the apartment, coming and going only when someone else was home, and there was no evidence Johnson expected Rider to assist him in protecting his belongings. (*Ibid.*)

In summary, the evidence supported the jury's implied conclusion that both Jacqueline and Eva were in constructive possession of the stolen property. Accordingly,

7

defendants' robbery convictions pertaining to Jacqueline (count 3) and Eva (count 4) are affirmed.

DISPOSITION

The judgments are affirmed.


McINTYRE, J.

WE CONCUR:

NARES, Acting P. J.

McDONALD, J.