Filed 7/25/14  P. v. Cazares CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>APOLINAR CAZARES,<br><br>    Defendant and Appellant. | F066226<br><br>(Super. Ct. No. F12902018)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Mark W. Snauffer, Judge.

Jake Stebner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Julie A. Hokans, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Cornell, Acting P.J., Kane, J. and Franson, J.

**INTRODUCTION**

Appellant Apolinar Cazares was convicted of two counts of robbery arising from his theft of a bag of frozen shrimp from a Fresh & Easy grocery store. He appeals his robbery convictions on the grounds the evidence was insufficient to support the convictions; specifically, that the two store employee victims were not in constructive possession of the item stolen. We disagree and will affirm the judgment.

**FACTUAL AND PROCEDURAL SUMMARY**

On March 20, 2012, David Conley and Patrick King, Jr., were employed as team leaders at the Fresh & Easy grocery store located on Tulare and R Streets in Fresno. As team leaders, Conley and King were responsible for shift supervision, receiving inventory, and handling cash. The store did not have loss prevention officers on site; all employees were expected to watch for shoplifting.

The morning of March 20, 2012, a man came into the store with a backpack in his shopping cart. The man, later identified as Cazares, put a bag of frozen shrimp into his backpack and then left the store without paying for the item. After being alerted of the theft by the front counter customer assistant, Conley and King went outside the store to see if they could locate the shoplifter.

Conley and King saw a man on the other side of the street that fit the description of the shoplifter given by the customer assistant. Both Conley and King yelled at the man to stop; instead, he took off running. Without stopping to think, Conley ran after the man; King followed. Conley and King chased Cazares for a few blocks until he stopped and then turned into an alley. A meat cleaver fell out of Cazares's pocket; he picked up the meat cleaver and brandished it. While Conley and King were standing about 10 feet from him, Cazares held the meat cleaver in a threatening manner and said something like, "Come any closer, and I will cut you."

Following the confrontation with the cleaver, Cazares again took off running. Conley and King continued to follow him, but from a much farther distance. As they

2.

continued after Cazares, King used his cell phone to call 911 for police assistance. After losing sight of Cazares, Conley and King headed back to the store and flagged down a police officer.

Officer David Porcella was dispatched to the Fresh & Easy grocery store in response to the 911 call. Porcella spoke with Conley and King briefly and then circulated in the area around the store. Porcella spotted a man matching the description of the suspect and who appeared to be attempting to avoid being seen; it was Cazares. Porcella detained Cazares at gunpoint and then handcuffed him with the assistance of other officers.

While in the process of detaining and handcuffing Cazares, Porcella noticed a meat cleaver in Cazares's back pocket. Cazares also had a backpack in his possession. A search of the backpack disclosed a bag of frozen Fresh & Easy brand shrimp.

Officers took a full statement from Conley and King after they returned to the grocery store; they then were driven to where Cazares was being detained. They both identified Cazares as the person they were chasing and who had threatened them with a meat cleaver.

Cazares was charged in counts 1 and 2 with second degree robbery against Conley and King, respectively, and in counts 3 and 4 with assault with a deadly weapon upon Conley and King. It also was alleged as to counts 1 and 2 that Cazares personally used a deadly and dangerous weapon.

At trial, Cazares presented no witnesses or evidence on his behalf. After the close of the evidentiary portion of the trial, but before submission of the case to the jury, Cazares moved for an acquittal pursuant to Penal Code section 1118.1.[1] The trial court denied the motion as to counts 1 and 2, but granted the motion as to counts 3 and 4.

---

[1]All further statutory references are to the Penal Code.

The jury found Cazares guilty of counts 1 and 2 and the enhancements appended thereto to be true. Sentence was imposed on November 29, 2012.

## DISCUSSION

Cazares's sole contention on appeal is that the evidence was insufficient to support his convictions for second degree robbery. Specifically, Cazares contends Conley and King could not be victims of robbery because they did not have constructive possession of the bag of shrimp at the time he threatened them with the meat cleaver. Cazares is mistaken.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accompanied by means of force or fear." (§ 211.) A person who initially takes personal property without the use of force or fear still may be found guilty of robbery if she or he subsequently uses force or fear in the victim's presence to retain or carry away the personal property. (*People v. Gomez* (2008) 43 Cal.4th 249, 256, 264 (*Gomez*).)

A store employee may be the victim of a robbery even though he is not the owner of the item and is not, at the moment of the taking, in immediate control of the property. (*People v. Miller* (1977) 18 Cal.3d 873, 880.) Possession may be constructive in nature. (*People v. Bekele* (1995) 33 Cal.App.4th 1457, 1461.) For constructive possession, courts have required the victim of the robbery to have a "special relationship" with the owner of the property, such that the victim had authority or responsibility to protect the stolen property on behalf of the owner. (*People v. Scott* (2009) 45 Cal.4th 743, 749 (*Scott*).)

Cazares contends that because Fresh & Easy discouraged its employees from giving chase to shoplifters and were to confine their loss prevention efforts to the store premises, they no longer were in a "special relationship" with the owner at the time force or fear to retain the property was used. We reject this contention for two reasons.

First, there was conflicting testimony as to the store policy on chasing shoplifters. Conley stated a "no chase" policy was in effect; a customer service assistant at the store testified they were advised after the March 20, 2012, incident that the store's policy was not to chase after shoplifters. However, King and the store manager testified that the store did not have a "no chase policy" and did not discipline employees who did give chase. The jury may well have credited the store manager's testimony as the person most likely to be fully informed on the store policy. A reasonable jury could have concluded that without a "no chase policy" in effect, King and Conley were acting within the scope of their responsibility to protect Fresh & Easy's property at the time they encountered Cazares. (*Scott, supra,* 43 Cal.4th at p. 749.)

Second, even if there were a "no chase policy" in effect, this does not constitute unique circumstances that exceed the scope of the holding in *Scott.* As the California Supreme Court stated in *Scott*:

> "[I]t is reasonable to infer that the Legislature intended that all on-duty employees have constructive possession of the employer's property during a robbery, because such a rule is consistent with the culpability level of the offender and the harm done by his or her criminal conduct. As a matter of common knowledge and experience, those who commit robberies are likely to regard all employees as potential sources of resistance, and their use of threats and force against those employees is not likely to turn on fine distinctions regarding a particular employee's actual or implied authority." (*People v. Scott, supra,* 45 Cal.4th at p. 755.)

Cazares's discussion of the doctrine of respondeat superior from civil law does not support his contention. Conduct that violates an employee's official duties, or conduct that disregards the employer's express orders, may nevertheless be within the scope of employment. (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 209.)

Cazares used force or fear against Conley and King to retain possession of the stolen property—the bag of frozen shrimp. (*Gomez, supra,* 43 Cal.4th at pp. 256, 264.) As on-duty employees of Fresh & Easy at the time, Conley and King were in constructive

5.

possession of the stolen item.  (*Scott, supra,* 45 Cal.4th at p. 755.)  The elements of section 211 were satisfied.  Substantial evidence supported the robbery convictions. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129.)

## DISPOSITION

The judgment is affirmed.