Filed 4/27/16  P. v. Garcia CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

ANGEL LEE GARCIA,

     Defendant and Appellant.

E062204

(Super.Ct.No. FSB1304527)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Ronald M. Christianson, Judge.  Affirmed.

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Daniel Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Angel Lee Garcia guilty of four counts of second degree robbery (Pen. Code,[1] § 211, counts 1-4) and one count of assault with a deadly weapon (§ 245, subd. (a)(1), count 5). The jury found true the allegations that defendant personally used a knife in the commission of counts 1 through 4. (§ 12022, subd. (b)(1).) The trial court found defendant had served three prior prison terms (§ 667.5, subd. (b)), and sentenced him to five years on count 1, plus a consecutive one year on the weapon enhancement. The court imposed consecutive terms of one year four months on counts 2 through 4, including the weapon enhancements, plus one year on each of the three prison priors, for a total term of 13 years in state prison. The court stayed the sentence on count 5 pursuant to section 654.

On appeal, defendant contends there was insufficient evidence to support his conviction for the robbery of victim Juan Carlos Levano in count 2. The judgment is affirmed.

FACTUAL BACKGROUND

At approximately 11:00 p.m. on October 6, 2013, Socorro Ruiz and Josefina Ortega were working as cashiers at a gas station convenience store (the store). Defendant entered the store. After a few minutes, he approached the two cashiers with a knife in his hand and demanded money. Ruiz told him to take the money. He attempted to open the cash register, but was unable to do so. Defendant then noticed one hundred dollars in

_____

[1] All further statutory references will be to the Penal Code, unless otherwise noted.

cash that was sitting under the cash register. He grabbed the money and ran out of the store.

Juan Carlos Levano also worked as a cashier at the store and was scheduled to work that night. His shift started at 11:00 p.m., and he arrived at the gas station at approximately 10:58 p.m. He parked right in front of the entrance door to the store. He got out of his car and immediately observed his coworkers in the cash register area with defendant, who was holding a knife up and searching for something. He watched defendant for about 15 to 20 seconds and noticed that his coworkers looked scared. When he realized that a robbery was taking place, Levano's first instinct was to hold the door closed, so defendant could not escape. However, he was afraid that defendant would get angry and hurt someone inside the store. Instead, Levano called 911. While he was on the phone with the 911 operator, defendant ran out of the store, in Levano's direction. Levano wanted to grab him, figuring he "could probably take him." However, when he tried to reach out and grab defendant by his clothing, defendant swung the knife at him. Levano managed to move to the right, and defendant kept running. Once defendant reached the edge of the parking lot, he climbed on a bicycle and rode away.

## ANALYSIS

### The Evidence Was Sufficient to Support the Robbery Conviction

Defendant contends that the evidence was insufficient to establish that Levano was the victim of robbery in count 2. He contends that the conviction must be reversed because Levano was not yet "on duty" when the robbery occurred and, thus, did not have

3

constructive possession of the station owner's property. We disagree.

A. *Standard of Review*

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

B. *The Evidence Was Sufficient*

Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) "Robbery of a particular person has not occurred unless property was taken from the person's immediate presence and the defendant used force or fear to take the property or to prevent the person from resisting." (*People v. Scott* (2009) 45 Cal.4th 743, 749 (*Scott*).) In addition, "[a] person from whose immediate presence property was taken by force or fear is not a robbery victim unless . . . he or she was in some sense in possession of the property." (*Ibid.*)

"A person who owns property or who exercises direct physical control over it has possession of it, but neither ownership nor physical possession is required to establish the element of possession for the purposes of the robbery statute. [Citations.] '[T]he theory

4

of constructive possession has been used to expand the concept of possession to include employees and others as robbery victims.'" (*Scott*, *supra*, 45 Cal.4th at pp. 749-750.) "For constructive possession, courts have required that the alleged victim of a robbery have a 'special relationship' with the owner of the property such that the victim had authority or responsibility to protect the stolen property on behalf of the owner." (*Id*. at p. 750.) "California follows the long-standing rule that the employees of a business constructively possess the business owner's property during a robbery." (*People v. Jones* (2000) 82 Cal.App.4th 485, 490.)

Here, Levano was an employee of the gas station store, and, as such, had sufficient authority or responsibility to protect the stolen money, on behalf of the owner. Immediately after he arrived at work, he realized that his coworkers were being robbed and called 911. As he was speaking to the 911 operator, defendant ran out of the store toward him. Levano attempted to reach out and grab defendant's clothing to stop him from getting away with the money. In other words, Levano was acting in a representative capacity with respect to the owner of the store.

Defendant argues that his conviction must be reversed simply because Levano was not *on duty* when he encountered him. He reasons that Levano, therefore, was not in constructive possession of the money taken from the store. In support of his position, defendant cites a portion of *Scott*, *supra*, 45 Cal.4th 743, which states that "any employee has, by virtue of his or her employment relationship with the employer, some implied authority, when on duty, to act on the employer's behalf to protect the employer's

property when it is threatened during a robbery." (*Id*. at p. 754.) He claims that, under *Scott*, constructive possession has only been extended to employees who are "on duty." However, *Scott* does not appear to stand for that proposition. In *Scott*, the defendants robbed a McDonald's restaurant and were charged with three counts of robbery. The alleged victims were three employees who were on duty at the time. One of them was working at the drive-through window, another was preparing food in the kitchen, and the other was the manager, who was the only one with access to the safe. (*Id*. at p. 747.) During deliberations at trial, the jury asked the court "whether all employees have constructive possession of the company's property while on duty." (*Id*. at p. 748.) The court responded affirmatively. (*Id*. at pp. 748-749.) The issue on appeal was whether each employee who is subjected to force during a robbery is in constructive possession of the owner's property, regardless of their particular job responsibilities. (*Id*. at pp. 751-753.) Thus, when read in context, the quotation from *Scott* cited by defendant in the instant case simply reflects the court's conclusion that all on-duty employees have constructive possession of the employer's property during a robbery, regardless of whether their duties involved access to or control over the property. The court was not holding that *only* employees on duty had constructive possession, since that was not at issue.

We further note the fact that Levano was not yet "on duty" should not exclude him as a robbery victim. He had constructive possession at the time of the robbery to the same degree as if he had technically started his shift, which was scheduled to begin

6

approximately 60 seconds later.  As stated in *Scott*, "By requiring that the victim of a robbery have possession of the property taken, the Legislature has included as victims those persons who, *because of their relationship to the property or its owner*, have the right to resist the taking, and has excluded as victims those bystanders who have no greater interest in the property than any other member of the general population." (*Scott*, *supra*, 45 Cal.4th at pp. 757-758, italics added.)  The evidence here showed that Levano was not simply a bystander, but was acting as an employee in his representative capacity when he called 911 and attempted to prevent defendant from taking the money.

Under the particular circumstances of this case, Levano was in constructive possession of the money taken by defendant.  Accordingly, we conclude that substantial evidence supports defendant's conviction for robbery in count 2.

<u>DISPOSITION</u>

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>HOLLENHORST</u>
J.

We concur:

<u>RAMIREZ</u>
P. J.

<u>McKINSTER</u>
J.

7