Filed 10/27/14  P. v. Ledezma CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MAXIMILIANO ADAM LEDEZMA,<br><br>    Defendant and Appellant. | 2d Crim. No. B249658<br>(Super. Ct. No. 2012035338)<br>(Ventura County) |

Maximiliano Adam Ledezma appeals a judgment following conviction of second degree robbery, and assault with a deadly weapon by means likely to produce great bodily injury, with findings that he personally and intentionally discharged a firearm, carried the firearm within a vehicle, and committed the crimes to benefit a criminal street gang.  (Pen. Code, §§ 211, 245, subd. (a)(1), 12022.53, subd. (c), 25850, subd. (a), 186.22, subd. (b)(1).)[1]  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

During the afternoon of May 27, 2011, Chase Christensen, Ronald Allen, Ricky Garcia, and Jacqueline Ayala were "hanging out" and smoking marijuana at Grant Park in Ventura.  After a while, Christensen decided to drive the group to the beach in his automobile.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

As they prepared to leave, Allen noticed a vehicle stopping behind them. Garcia then saw that he had neglected to remove his blue Jansport backpack from the hood of the automobile. Garcia or another passenger asked Christensen to retrieve the backpack. Before Christensen could remove the backpack, however, Ledezma and another Hispanic man approached.

Ledezma held a firearm, announced "Ventura Avenue, fool," and demanded that Christensen "empty out his pockets" and "give [Ledezma] [his] shit." Christensen replied, "If you are going to pull a gun on me, you better pull the trigger." Ledezma responded by pistol-whipping Christensen and then firing the firearm at the ground. The man accompanying Ledezma grabbed Garcia's backpack and both men fled toward the vehicle parked behind.

The passengers in Christensen's automobile saw the attack, but could not identify Ledezma as the man who struck Christensen and demanded his money. Ayala recorded the acts with her cellular telephone but due to her position in the backseat, did not fully capture Ledezma's face. The prosecutor played the 30-second recording at trial.

Christensen then drove to a fast-food restaurant where the group reported the crimes. Officer Jon Fournell interviewed Christensen and noted his forehead laceration. Christensen gave "very little description" of his assailant, stating that he preferred not to be "a rat."

Officer Michael Gens drove to Grant Park and saw a "fresh disturbance" in the gravel where Ledezma fired the firearm, but did not find a firearm shell casing in the area. Officer Mark Knackstedt also responded to the police dispatch and stopped the driver of a gray-colored automobile leaving Grant Park at "a high rate of speed." Knackstedt recognized the driver of the automobile as Joseph Guinn, a member of a white supremacy criminal street gang who associated with the Ventura Avenue criminal street gang. Garcia's blue backpack lay on the back floor of the automobile, but the money that had been inside was missing.

Ventura Detective Todd Hourigan viewed the video recording on Ayala's cellular telephone and studied the gunman's nose, right eye, and throat ("a large Adam's

2

apple"). Hourigan knew Ledezma as an active and registered member of the Ventura Avenue criminal street gang. Based upon a comparison with Ledezma's police photograph, Hourigan believed that Ledezma was the man who assaulted and robbed Christensen.

Hourigan later displayed a photographic lineup to Christensen who selected Ledezma's photograph. At trial, Christensen identified Ledezma as his assailant.

Following Ledezma's arrest and advisement of rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, 444, Officer Cameron Goettsche interviewed him. Ledezma denied committing the crimes at Grant Park but admitted that he knew Guinn.

*Criminal Street Gang Evidence*

At trial, Hourigan testified that the Ventura Avenue criminal street gang had 250 to 300 members and associates and was "the most fierce" gang in Ventura. He stated that Grant Park fell within the gang's claimed territory and that the occupants of the gray automobile in which Garcia's backpack was found are admitted Ventura Avenue gang members or associates. Hourigan stated that Ventura Avenue gang members commit assaults, robberies, car thefts, drug sales, and weapon sales, and members have been convicted of specific predicate crimes. He testified that Ledezma had been arrested previously for gang-related crimes. Hourigan also opined that Ledezma committed the crimes at Grant Park to benefit his gang because stating "Ventura Avenue" instilled fear in a victim.

*Conviction and Sentencing*

The jury convicted Ledezma of second degree robbery, and assault with a deadly weapon by means likely to produce great bodily injury. (§§ 211, 245, subd. (a)(1).) The jury also found that Ledezma personally and intentionally discharged a firearm, carried the firearm within a vehicle, and committed the crimes to benefit a criminal street gang. (§§ 12022.53, subd. (c), 25850, subd. (a), 186.22, subd. (b)(1).)

The trial court sentenced Ledezma to a total prison term of 35 years, consisting of an upper five-year term for the robbery, a 20-year term for the personal firearm use enhancement, and a 10-year term for the criminal street gang enhancement.

3

The court imposed and stayed sentence for the assault with a deadly weapon conviction, and struck the vehicle-firearm enhancement.  (§§ 654, 1385, subd. (a).)  It also imposed a $500 restitution fine, a $500 parole revocation restitution fine (stayed), an $80 court security assessment, and a $60 criminal conviction assessment, and awarded Ledezma 777 days of presentence custody credit.  (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

Ledezma appeals and contends that:  1) insufficient evidence supports his conviction for robbery, and 2) insufficient evidence supports the criminal street gang finding.  Ledezma claims that the conviction and finding violate his federal and California constitutional rights to due process of law and a fair trial.  Pursuant to federal and California constitutional principles, we conclude otherwise.

*DISCUSSION*

*I.*

Ledezma argues that insufficient evidence supports his robbery conviction because he did not take property from Christensen, and insufficient evidence exists that he aided and abetted the man who took the backpack.  He asserts that, at most, he committed an attempted robbery of Christensen.  To support his argument, Ledezma points out that he was not a passenger in the gray-colored automobile that contained Garcia's backpack.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Jackson* (2014) 58 Cal.4th 724, 749; *People v. Streeter* (2012) 54 Cal.4th 205, 241.)  Our review is the same in a prosecution primarily resting upon circumstantial evidence.  (*People v. Watkins* (2012) 55 Cal.4th 999, 1020.)  We do not reweigh the evidence or reassess the credibility of witnesses.  (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)  We accept the logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise.  (*Streeter*, at p. 241.)  "If the

4

circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.) In our review, we focus upon the evidence that was presented at trial, rather than evidence that could have been presented, but was not. (*People v. Story* (2009) 45 Cal.4th 1282, 1299.)

A person may be liable for a criminal act as an aider and abettor. (§ 31 ["principals" in a crime include those who "aid and abet in its commission, or . . . have advised and encouraged its commission"]; *People v. Delgado* (2013) 56 Cal.4th 480, 486.) An aider and abettor must act with knowledge of the direct perpetrator's unlawful intent and with an intent to assist in achieving those unlawful ends, and his conduct must in fact facilitate commission of the crime. (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069; *Delgado*, at p. 486.) "[A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 560.)

Section 211 provides that robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." For purposes of robbery, possession may be actual or constructive. (*People v. Scott* (2009) 45 Cal.4th 743, 748, 753.) The law requires "only that there be some type of 'special relationship' with the owner of the property sufficient to demonstrate that the victim had authority or responsibility to protect the stolen property on behalf of the owner." (*Ibid.*)

The law of robbery also includes a broad definition of "immediate presence." (*People v. Gomez* (2008) 43 Cal.4th 249, 257.) "Immediate presence" is an area over which the victim, at the time force or fear was used, exercised some physical control over his property. (*Ibid.*) Thus, property may be within the victim's immediate presence although it is found in a different room of a building or in another building on the premises, for example. (*Ibid.*)

5

There is sufficient evidence that Christensen had constructive possession of Garcia's backpack and that it was taken by Ledezma's crime partner from Christensen's immediate presence. When Christensen left his automobile to retrieve Garcia's backpack, he had a "special relationship" with Garcia and the authority or responsibility to protect the backpack resting upon the hood of his car. (*People v. Scott*, *supra*, 45 Cal.4th 743, 753.) The backpack was also within Christensen's immediate presence because he could have retained constructive possession of it had he not been prevented by fear or violence. (*People v. Gomez*, *supra*, 43 Cal.4th 249, 257 [the spatial concept of immediate presence has been broadly applied].)

There is also sufficient evidence and reasonable inferences therefrom that Ledezma aided and abetted his crime partner in taking Garcia's backpack. Ledezma and his partner approached Christensen as Christensen prepared to retrieve the backpack and drive away. Ledezma demanded money, pistol-whipped Christensen, and fired his firearm at the ground, as his partner seized the backpack. Ledezma declared the name of his criminal street gang as he committed the crimes. The two men then ran to the vehicle parked behind Christensen's automobile. The backpack was later found in an automobile occupied by Ventura Avenue gang members and associates. This evidence satisfies constitutional principles of due process and a fair trial.

## II.

Ledezma contends that there is insufficient evidence that he committed a gang-related crime, asserting that he acted alone in confronting Christensen and that Christensen testified that the gang name may have been declared after the backpack had been taken.

There is sufficient evidence that Ledezma committed the crimes in association with a criminal street gang and that he had the specific intent to promote the gang by his acts. (§ 186.22, subd. (b)(1).) Ledezma was a longtime admitted member of the Ventura Avenue gang and the crimes occurred in a neighborhood claimed by the gang. Passengers in Christensen's automobile heard Ledezma declare "Ventura Avenue" as he pointed a firearm at Christensen. (*People v. Debose* (2014) 59 Cal.4th 177, 205

6

[commission of robbery is ongoing until robber has reached a place of temporary safety].) Garcia's backpack was found in an automobile in which the driver and passengers were Ventura Avenue gang members or associates. Based upon a hypothetical question, Hourigan opined that Ledezma committed the crimes in association with the Ventura Avenue gang and that the crimes benefitted the gang by instilling fear in the victim and the community. (*People v. Vang* (2011) 52 Cal.4th 1038, 1048 [expert opinion that particular criminal conduct benefitted a criminal street gang is sufficient to support a section 186.22, subdivision (b) enhancement].)

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.

7

Patricia M. Murphy, Judge

Superior Court County of Ventura

_____

Laurie A. Thrower, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, Brendan Sullivan, Deputy Attorney General, for Plaintiff and Respondent.