Filed 1/21/22

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>LAMONTE SHERMALE BANNER,<br><br>　　　Defendant and Appellant. | F079770<br><br>(Super. Ct. No. BF169096A)<br><br><br>**OPINION** |
| In Re<br><br>　　　LAMONTE SHERMALE BANNER,<br><br>　　　　　On Habeas Corpus. | F081144<br><br>(Super. Ct. No. BF169096A) |

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa, Judge.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of sections III, IV and V.

Martinez and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Lamonte Shermale Banner was convicted by jury of two attempted robberies for a single act involving two restaurant employees. He raises four claims on appeal challenging one conviction and the judgment.

One, did the court err in not considering mental health diversion? (See Pen. Code,[1] § 1001.36.) Two, was Banner's counsel ineffective in failing to request mental health diversion? Three, is the second attempted robbery conviction sufficiently proven? Four, did the court err in ordering certain fines and fees as part of the judgment? We find no merit in these claims and will affirm.

In a separately filed habeas petition,[2] Banner adds to the ineffective counsel claim. For reasons explained below, we will deny the petition.

## BACKGROUND

**Charges**

The Kern County District Attorney charged Banner with two counts of attempted robbery (§ 212.5). The charges included allegations of prior strike and prior serious felony convictions. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d), & 667, subd. (a).)

**Trial Evidence**

The facts are simple. Banner entered a restaurant and waited in line several minutes behind multiple customers.[3] Two employees helped each customer. When

---

[1] Statutory references are to the Penal Code unless otherwise stated.

[2] We ordered the appeal and petition consolidated for decision.

[3] These specific facts are based on a video surveillance exhibit.

2.

Banner reached the cash register at the front of the line, he produced a toy[4] firearm and demanded money from the employee operating the register. That employee did not believe the firearm was real and refused to comply.

A second employee, standing near the register and across from Banner,[5] ran away in fear. Banner subsequently left emptyhanded and was arrested nearby a short time later. He denied committing the crime.

**Verdict and Sentence**

Banner was convicted as charged.[6] He was sentenced to serve nine years in state prison.

## DISCUSSION

We first address Banner's appellate claims and then turn to the habeas petition. Finding no prejudicial error, we affirm the judgment and deny the petition.

**I. No Sua Sponte Duty to Consider Mental Health Diversion**

Banner argues "[t]he trial court erroneously violated its duty to consider [his] eligibility for pretrial mental health diversion under section 1001.36." He asserts "[t]he trial court had a sua sponte duty to consider … eligibility for mental health diversion …."

The People maintain "[s]ection 1001.36 contains no language mandating the court to entertain diversion in any case." They also claim Banner did not otherwise meet all criteria for diversion.

We agree with the People. Section 1001.36 does not confer a sua sponte duty on trial courts to consider mental health diversion. Nonetheless, the record reveals the trial

---

[4] It is unclear whether the firearm was real because it was never recovered. The district attorney did not charge a firearm enhancement and one victim did not believe it was real. For simplicity, we will assume it was a toy.

[5] The employee's proximity to Banner and the cash register is based on video evidence.

[6] The court found the prior conviction allegations true in a bifurcated trial.

court was mindful of section 1001.36 and did not believe Banner's mental health played a role in this crime.

## A. Additional Background

At the sentencing hearing, the court announced it had reviewed "several hundred pages" of "mental health records …." It found Banner's prior "participation in [treatment] was inconsistent …." The court noted Banner's prior "support plan[s] … failed," "believe[d] [he did] have mental health issues," and expressed appreciation for the Legislature's enactment of section 1001.36. Finally, the court concluded "the fact [Banner] was able to conduct the crime in the way he did does not mean that he does not suffer from a mental health issue. It may just mean that it was somewhat in abeyance at the time …."

## B. Relevant Statutory Language

Section 1001.36 provides, in part, a "court may, after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant," if, among other factors, "[t]he court is satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense …." Another factor involves the "defendant['s] consent[] to diversion and waive[r]" of his or her constitutional "right to a speedy trial …." (See § 1001.36, subd. (b)(1) [listing factors].)

## C. Analysis

Based on section 1001.36, Banner presents three statutory-construction arguments in concluding trial courts have a "sua sponte duty" to consider mental health diversion. We consider each in turn.

First, Banner claims a defendant's consent to diversion is irrelevant if the statute requires a request for diversion. In other words, why would the statute require consent if the defendant is required to invoke diversion? He bases his claim on the canon "a statute should not be interpreted in a way that would render other provisions of the statute" surplusage. (E.g., *Ennabe v. Manosa* (2014) 58 Cal.4th 697, 719 [" 'Courts should give

4.

meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.' "].)  His interpretation, however, renders other parts of the statute surplusage.

For example, section 1001.36, subdivision (b)(3), states:

> "*At any stage of the proceedings, the court may require the defendant to make a prima facie showing* that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion.  The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel.  If a prima facie showing is not made, the court may summarily deny *the request for diversion* or grant any other relief as may be deemed appropriate."  (Emphasis added.)

This section undoubtedly contemplates a "request for diversion" originating in the defendant.

Banner's interpretation would also call into question the Legislature's mandate that "[e]vidence of the defendant's mental disorder shall be provided by the defense …." (§ 1001.36, subd. (b)(1)(A).)  For this reason, " 'like all ... interpretive canons, the canon against surplusage is a guide to statutory interpretation and is not invariably controlling.' "  (*People v. Raybon* (2021) 11 Cal.5th 1056, 1070, fn. 10.)

Next, Banner argues "[t]he only way to harmonize the phrases 'the court may, after considering the positions of the defense and prosecution' [citation] and '[t]he defendant consents to diversion' [citation] is to interpret the statute as imposing a sua sponte duty on the trial court to consider the defendant's eligibility for pretrial diversion."[7]  We discern no disharmony in these phrases.  Indeed, Banner's interpretation injects disharmony into the statute by ignoring the paragraph describing a "request for

---

[7] This point is based on the canon courts " ' "must harmonize 'the various parts of a statutory enactment … by considering the particular clause or section in the context of the statutory framework as a whole.' " ' "  (*People v. Lewis* (2021) 11 Cal.5th 952, 961.)

diversion" and requiring the defendant to prove eligibility for diversion. (See § 1001.36, subd. (b)(3).) If the court is required to unilaterally consider diversion, then a "request for diversion" is without substance.

Finally, Banner states, "[I]f the Legislature intended for the defendant to make a request for pretrial diversion, the Legislature would have included such a requirement in the statute."[8] But the Legislature clearly did not mandate courts to sua sponte consider mental health diversion in every case. It could have simply included such a requirement in the statute if that was its intent; it did not.

In our view, the Legislature crafted a scheme wherein the diversionary interest originates in the defendant or someone other than the defendant, e.g., counsel,[9] the prosecutor,[10] or the judge.[11] In those situations, a defendant justifiably professing his or her innocence might well decline diversion and choose instead to put the People to their burden of proof. Nowhere, however, does the scheme mandate a sua sponte duty for trial courts to consider mental health diversion. After all, a defendant (or his or her counsel) is often best positioned to know whether mental health diversion is an appropriate outcome. (See *People v. Graham* (2021) 64 Cal.App.5th 827, 835, review granted Sept. 1, 2021, S269509 ["the onus is placed on the defendant to raise the issue of diversion"].)

---

[8] This argument is based on a commonsense maxim. (See, e.g., *People v. Hillhouse* (2003) 109 Cal.App.4th 1612, 1619 [" 'Had the Legislature intended otherwise, it plainly knew how to do so.' " ].)

[9] In an ideal world, counsel and defendant's views on diversion would perfectly align. In reality, those views might differ even when counsel believes he or she is acting in the client's best interests.

[10] A prosecutor might, for example, believe diversion is a suitable resolution after garnering further information not readily available when the charges were filed.

[11] A scenario in which this could occur is where the defendant is mentally incompetent to stand trial. Section 1001.36 addresses this possibility. (See § 1001.36, subd. (b)(1)(D) [consent requirement dispensed with when defendant mentally incompetent].)

Even if we assume trial courts had a sua sponte duty to consider mental health diversion, Banner would still not prevail. "The California Constitution prohibits a court from setting aside a judgment unless the error has resulted in a 'miscarriage of justice.' " (*In re Celine R.* (2003) 31 Cal.4th 45, 59—60.) This means reversal is appropriate "only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error." (*Ibid.*) We do not.

We reach this conclusion because the trial court here did not believe Banner's mental health was a significant factor in *this* crime. Such belief is required to grant diversion. (§ 1001.36, subd. (b)(1)(B).) The limited remedy described in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*) is thus inapplicable.

In *Frahs,* the Supreme Court held a limited remand is appropriate "when, as here, the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion — the defendant suffers from a qualifying mental disorder …." (*Frahs, supra,* 9 Cal.5th at p. 640.) But *Frahs* was written in context of its application to sentencing hearings occurring before section 1001.36 was enacted. (*Id.* at p. 638 ["defendant was tried and convicted before section 1001.36 became effective"].) Moreover, *Frahs* itself recognizes the procedural limits of its holding. (*Id.* at p. 640 [not addressing questions not presented].)

To be clear, the record here contained significant evidence of Banner's mental illness, which was discussed at the sentencing hearing.[12] Based on the entire record, however, the court could reasonably conclude Banner's mental health was not a significant factor underlying the crime.[13]

---

[12] As discussed in detail below, Banner's counsel advocated for a sentence involving nonstatutory mental health programming in lieu of incarceration.

[13] To illustrate, Banner testified at the trial and claimed he was innocent. He again professed innocence in his posttrial statutory probation interview (§ 1203). During sentencing, he made no statement. His interview with a police officer at the crime scene was coherent. No witness believed Banner was mentally ill during the incident. Put

7.

In sum, a trial court "may" grant mental health diversion after first broaching its prospects with the parties,[14] but there is no sua sponte duty to do so in the absence of a request by the defendant or any other person.[15]  Nonetheless, we join our colleagues in "emphasiz[ing] that our trial courts must give serious consideration to this critical alternative, for the good not just of mentally ill offenders but, ultimately, society at large."  (*People v. Williams* (2021) 63 Cal.App.5th 990, 1005; *People v. O'Hearn* (2020) 57 Cal.App.5th 280, 300—301.)  In conclusion, the trial court here did not err in pronouncing judgment without first explicitly contemplating diversion absent a request from Banner.[16]

## II.  Banner Cannot Prove Ineffective Assistance

This claim requires us to determine whether Banner received constitutionally ineffective counsel.  He complains he did "because any constitutionally effective defense

---

simply, nowhere in the record does evidence appear Banner's mental illness played a significant role in these crimes.

We point this out not to discredit or disparage Banner in any way, and certainly not to place upon him or any defendant a burden to testify or make any statement explaining why his or her mental illness culminated in a specific incident.  We point it out only to explain how the trial court reasonably could conclude Banner's illness was in "abeyance at the time …."  (*People v. Oneal* (2021) 64 Cal.App.5th 581, 589 ["trial court's factual findings [upheld] if supported by substantial evidence"].)

It is true Banner was found mentally incompetent prior to his trial.  But the court did not declare a doubt as to Banner's competency until nearly seven full months after his arrest.  (See § 1368.)

[14] The court must still comply with all statutory requirements, particularly "considering the positions of the defense and prosecution …."  (§ 1001.36, subd. (a).)

[15] Other statutes are similarly structured.  (E.g., § 1385 [court may dismiss action on its own or on application of prosecutor]; see *People v. Lee* (2008) 161 Cal.App.4th 124, 129 ["no sua sponte duty" arises under section 1385].)

[16] Whether Banner's request for diversion at sentencing would be timely is currently under review by the Supreme Court in *People v. Braden* (2021) 63 Cal.App.5th 330*, review granted July 14, 2021, S268925.  Because that question is not raised in this case, we neither address it nor express a view on its resolution.

counsel … would have requested mental health diversion under section 1001.36." The People respond Banner "cannot establish … ineffective assistance of counsel" "[b]ecause the record does not establish [he] was eligible for pretrial mental health diversion …." We agree with the People.

## A. Additional Background

At a pretrial hearing approximately seven months after the crime occurred, Banner's counsel declared a doubt regarding Banner's mental competency to stand trial. (§ 1368.) Just before trial, counsel indicated the possibility of calling an expert witness to describe Banner's mental state during the incident.[17]

During sentencing, counsel sought local mental health court as an alternative to imprisonment. Counsel also argued Banner's testimony, i.e., disclaiming responsibility, was a "symptom of his mental illness." As noted above, the court recognized Banner suffered from "mental health issues" but believed it "was somewhat in abeyance at the time of the situation for whatever purpose or whatever reason."

## B. Analysis

The Sixth Amendment guarantees the " 'right to the effective assistance of counsel.' " (*Strickland v. Washington* (1984) 466 U.S. 668, 685—686.) " '[T]o establish a claim of ineffective assistance of counsel, [Banner] bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective standard of reasonableness [¶] … under prevailing professional norms." [Citations.] Unless [he] establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was

---

[17] That witness ultimately did not testify.

9.

asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.] If [he] meets the burden of establishing that counsel's performance was deficient, he … must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 125 (*Bell*).)

"The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." (*In re Cox* (2003) 30 Cal.4th 974, 1019—1020 (*Cox*); *People v. Carrasco* (2014) 59 Cal.4th 924, 982.) We follow that course here.

At first glance, the record is unfavorable to counsel. For example, requesting informal mental health treatment but not statutory mental health diversion appears inconsistent. It is possible, however, counsel believed Banner did not meet each criterion for eligibility, specifically the fact mental illness must significantly underlay the crime.[18]

More importantly, it does not appear Banner was prejudiced. Again, the trial court did not believe Banner's mental illness played a significant role in this crime. Without believing mental illness was a "significant factor" in the crime, the court could not grant diversion. (§ 1001.36, subd. (b)(1)(B).) We conclude Banner has failed to discharge his burden to prove prejudice because he cannot prove the court would have found him eligible for diversion.

## III. Crimes Sufficiently Proven

Banner believes the evidence insufficiently proved attempted robbery against the second employee. He argues the evidence "does not support the reasonable inference that

---

[18] This is true notwithstanding counsel's sentencing argument Banner's mental illness was the reason he denied involvement in the crime.

[he] specifically intended to commit a robbery" against the second employee because he "never took any sort of action against her, such as demanding money …, pointing the apparent gun …, or threatening to shoot her."

The People state "it is reasonably inferable that [Banner] intended to rob anyone and everyone who had access to and control over the money when he entered the store." They assert " 'multiple convictions of robbery are proper if force or fear is applied to multiple victims in joint possession of the property taken.' " (*People v. Scott* (2009) 45 Cal.4th 743, 750 (*Scott*).)  We agree.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] … We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

" 'To constitute robbery the property must be removed from the possession and immediate presence of the victim against his will, and such removal must be by force or fear.' " (*People v. Nguyen* (2000) 24 Cal.4th 756, 761.)  "[N]either ownership nor physical possession is required to establish the element of possession for the purposes of the robbery statute." (*Scott, supra,* 45 Cal.4th at p. 749.)  "Two or more persons may be in joint constructive possession of a single item of personal property, and multiple convictions of robbery are proper if force or fear is applied to multiple victims in joint possession of the property taken." (*Ibid.*)

11.

" ' "[A] store employee may be the victim of a robbery even though he is not its owner and not at the moment in immediate control of the stolen property." ' " (*Scott, supra,* 45 Cal.4th at p. 751.) "[A]ll employees on duty have constructive possession of their employer's property and may be separate victims of a robbery."[19] (*People v. Bradford* (2010) 187 Cal.App.4th 1345, 1349.)

With these principles in mind, we conclude the evidence readily supports the jury's verdict. The evidence disclosed Banner entered the restaurant and stood in line for several minutes while observing two employees assist multiple customers. When Banner reached the front of the line, he produced a toy firearm and demanded money. At that point, both employees were in close proximity to one another and the cash register.

"As a matter of common knowledge and experience, those who commit robberies are likely to regard all employees as potential sources of resistance …." (*Scott, supra,* 45 Cal.4th at p. 755.) The jury could reasonably infer Banner was acutely aware *two* employees were obstacles in his path. The jury could also reasonably conclude he waited for the employees to converge before attempting the robbery in an effort to maximize control and success. This is consistent with an intent to rob *both* employees. Accordingly, the evidence sufficiently proved both attempted robberies.

---

[19] Although not in issue here, we make clear a "long line of California cases … have found evidence sufficient to establish that employees working at a business premises were in constructive possession of the employer's property during a robbery, based upon their status as employees and *without examining whether their particular duties involved access to or control over the property stolen*." (*Scott, supra,* 45 Cal.4th at p. 752, emphasis added.) This is so "because of their relationship to the property or its owner, [employees] have the right to resist the taking …." (*Id.* at p. 758.) That was borne out in this case when the second employee resisted the taking by fleeing and notifying law enforcement.

12.

## IV. Fines and Fees Properly Imposed

As pertinent, the trial court imposed a $300 restitution fine, an $80 operations fee, and a $60 conviction fee as part of the judgment.[20]  Banner did not object to their imposition.

"In general, a defendant who fails to object to the imposition of fines, fees, and assessments at sentencing forfeits the right to challenge those fines, fees, and assessments on appeal." (*People v. Lopez-Vinck* (2021) 68 Cal.App.5th 945, 950.)  "This is particularly so in a case such as this one, where the sentencing occurred *after* the *Dueñas* court declared a constitutional right to have a court determine the defendant's ability to pay before imposing statutorily mandated fines and assessments."[21]  (*Lopez-Vinck, supra,* at p. 950.)  Because Banner did not object, we conclude he forfeited this claim.

Alternatively, Banner contends his counsel was ineffective for failing to object post-*Dueñas*.  He bears the burden to demonstrate " ' " 'there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. … " ' " …  Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  [Citation.]  Defendant's burden is difficult to carry on direct appeal …: " 'Reviewing courts will reverse … [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical

---

[20] These obligations were imposed pursuant to sections 1202.4, 1465.8, and Government Code, section 70373, respectively.

[21] The decision in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 is the basis for Banner's claim.  It was published nearly seven full months prior to Banner's sentencing hearing.

purpose for [his or her] act or omission.' " ' " (*People v. Vines* (2011) 51 Cal.4th 830, 876.)

Based on the record, counsel may well have believed an objection to these financial obligations was futile. The only evidence relative to ability to pay disclosed Banner's assets and net monthly income exceeded the total obligation imposed by the court.[22] For these reasons we cannot find counsel ineffective nor can we find the court erred in its judgment.[23]

## V. Habeas Petition

In the habeas petition, Banner asserts his trial counsel was ineffective because she did not request diversion due to inadequate funding "and the Public Defender's Office had been unsuccessful in requesting diversion in other cases."[24] He argues "[i]t was incumbent upon trial counsel to request diversion and have the trial court improperly deny the request on the basis of inadequate funding." He concludes, "there is a reasonable chance that the trial court would have granted diversion if trial counsel had made the request …." We disagree.

As recited above, to prevail on an ineffective counsel claim, Banner must prove prejudice. (*Bell, supra,* 7 Cal.5th at p. 720.) We need not determine if trial counsel was deficient because Banner cannot prove prejudice. (See *Cox, supra,* 30 Cal.4th at

---

[22] The income statistics are contained in Banner's postconviction probation interview. (§ 1203.) The fines and fees imposed reflect the statutory minimum.

[23] To the extent Banner claims the fines and fees were constitutionally excessive, we disagree. Four hundred and forty dollars is not excessive for attempting to rob multiple people with a toy firearm. (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728 [proportionality is the touchstone of Eighth Amendment analysis].)

[24] This assertion is based on an asserted conversation between Banner's appellate counsel and Banner's trial counsel. Of course, we cannot pass upon the credibility of this assertion. Ordinarily, an evidentiary hearing is necessary to resolve credibility. Here, however, an evidentiary hearing is unnecessary because Banner is not entitled to relief even if appellate counsel's assertion is true and accurate.

pp. 1019—1020.)  Were we to assume trial counsel's rationale was deficient, it does not change the fact the trial court did not believe Banner's mental illness was a significant factor in these attempted robberies.  (See *ante*, Discussion, II. B., § 1001.36, subd. (b)(1)(B).)  For that reason, there is not a reasonable probability the trial court would have granted diversion and the petition lacks merit.

## **DISPOSITION**

The judgment is affirmed.  The petition for writ of habeas corpus consolidated with this appeal (previously numbered F081144) is denied.

SNAUFFER, J.

WE CONCUR:

DETJEN, ACTING P. J.

DE SANTOS, J.