Filed 4/8/22; on rehearing

### CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LAMONTE SHERMALE BANNER,<br><br>    Defendant and Appellant. | F079770<br><br>(Super. Ct. No. BF169096A)<br><br>**OPINION** |
| In Re<br><br>    LAMONTE SHERMALE BANNER,<br><br>        On Habeas Corpus. | F081144<br><br>(Super. Ct. No. BF169096A) |

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa, Judge.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of sections III, IV and V.  Except for those sections, the remainder of this opinion, including the minority opinion, should be published.

**SEE CONCURRING AND DISSENTING OPINION**

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Lamonte Shermale Banner was convicted by jury of two attempted robberies for a single act involving two restaurant employees.  Originally, he raised four claims on appeal.

One, did the court err in not considering mental health diversion?  (See Pen. Code,[1] § 1001.36.)  Two, was Banner's counsel ineffective in failing to request mental health diversion?  Three, is the second attempted robbery conviction sufficiently proven?  Four, did the court err in ordering certain fines and fees as part of the judgment?  We previously issued an opinion finding no merit in these claims.

Banner had also filed a separate habeas petition adding to the ineffective counsel claim.[2]  We likewise denied the petition.

After the original opinion was filed, Banner petitioned for rehearing raising two issues.  First, he argued we materially misunderstood the mental health diversion law.  Second, he alleged newly enacted Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 695, §§ 5-6) (AB 124) applies retroactively and creates a presumption favoring imposing the lower term of imprisonment in his case.

We granted the rehearing petition and solicited additional briefing from the parties.  Having considered the additional briefs, we reiterate our original conclusions but find AB 124 necessitates remand for a new sentencing hearing.  Accordingly, we will remand for a new sentencing hearing, but otherwise affirm the judgment.

---

[1] Statutory references are to the Penal Code unless otherwise stated.

[2] We ordered the appeal and petition consolidated for decision.

## BACKGROUND

**Charges**

The Kern County District Attorney charged Banner with two counts of attempted robbery (§ 212.5). The charges included allegations of prior strike and prior serious felony convictions. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d), & 667, subd. (a).)

**Trial Evidence**

The facts are simple. Banner entered a restaurant and waited in line several minutes behind multiple customers.[3] Two employees helped each customer. When Banner reached the cash register at the front of the line, he produced a toy[4] firearm and demanded money from the employee operating the register. That employee did not believe the firearm was real and refused to comply.

A second employee, standing near the register and across from Banner, ran away in fear. Banner subsequently left emptyhanded and was arrested nearby a short time later. He denied committing the crime.

**Verdict and Sentence**

Banner was convicted as charged.[5] He was sentenced to serve nine years in state prison, calculated as the middle term of two years for attempted robbery, doubled for the prior strike conviction, plus five years for the prior serious felony conviction.[6]

---

[3] These specific facts are based on a video surveillance exhibit.

[4] It is unclear whether the firearm was real because it was never recovered. The district attorney did not charge a firearm enhancement and one victim did not believe it was real. For simplicity, we will assume it was a toy.

[5] The court found the prior conviction allegations true in a bifurcated trial.

[6] The nine-year sentence was pronounced on Count 1. A concurrent sentence was imposed on Count 2.

## DISCUSSION

### I. No Sua Sponte Duty to Consider Mental Health Diversion

Banner argues "[t]he trial court erroneously violated its duty to consider [his] eligibility for pretrial mental health diversion under section 1001.36." He asserts "[t]he trial court had a sua sponte duty to consider … eligibility for mental health diversion …."

The People maintain "[s]ection 1001.36 contains no language mandating the court to entertain diversion in any case." They also claim Banner did not otherwise meet all criteria for diversion.

We agree with the People. Section 1001.36 does not confer a sua sponte duty on trial courts to consider mental health diversion. Nonetheless, the record reveals the trial court was mindful of section 1001.36 and did not believe Banner's mental health played a role in this crime.

#### A. Additional Background

At the sentencing hearing, the court announced it had reviewed "several hundred pages" of "mental health records …." It found Banner's prior "participation in [treatment] was inconsistent …." The court noted Banner's prior "support plan[s] … failed," "believe[d] [he did] have mental health issues," and expressed appreciation for the Legislature's enactment of section 1001.36. Finally, the court concluded "the fact [Banner] was able to conduct the crime in the way he did does not mean that he does not suffer from a mental health issue. It may just mean that it was somewhat in abeyance at the time …."

#### B. Relevant Statutory Language

Section 1001.36 provides, in part, a "court may, after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant," if, among other factors, "[t]he court is satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense …." Another factor involves the

4.

"defendant['s] consent[] to diversion and waive[r]" of his or her constitutional "right to a speedy trial …."  (See § 1001.36, subd. (b)(1) [listing factors].)

### C.  Analysis

Based on section 1001.36, Banner presents three statutory-construction arguments in concluding trial courts have a "sua sponte duty" to consider mental health diversion. We consider each in turn.

First, Banner claims a defendant's consent to diversion is irrelevant if the statute requires a request for diversion.  In other words, why would the statute require consent if the defendant is required to invoke diversion?  He bases his claim on the canon "a statute should not be interpreted in a way that would render other provisions of the statute" surplusage.  (E.g., *Ennabe v. Manosa* (2014) 58 Cal.4th 697, 719 [" 'Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.' "].)  His interpretation, however, renders other parts of the statute surplusage.

For example, section 1001.36, subdivision (b)(3), states:

> "*At any stage of the proceedings, the court may require the defendant to make a prima facie showing* that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion.  The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel.  If a prima facie showing is not made, the court may summarily deny *the request for diversion* or grant any other relief as may be deemed appropriate." (Emphasis added.)

This section undoubtedly contemplates a "request for diversion" originating in the defendant.

Banner's interpretation would also call into question the Legislature's mandate that "[e]vidence of the defendant's mental disorder shall be provided by the defense …." (§ 1001.36, subd. (b)(1)(A).)  For this reason, " 'like all ... interpretive canons, the canon

against surplusage is a guide to statutory interpretation and is not invariably controlling.' " (*People v. Raybon* (2021) 11 Cal.5th 1056, 1070, fn. 10.)

Next, Banner argues "[t]he only way to harmonize the phrases 'the court may, after considering the positions of the defense and prosecution' [citation] and '[t]he defendant consents to diversion' [citation] is to interpret the statute as imposing a sua sponte duty on the trial court to consider the defendant's eligibility for pretrial diversion."[7] We discern no disharmony in these phrases. Indeed, Banner's interpretation injects disharmony into the statute by ignoring the paragraph describing a "request for diversion" and requiring the defendant to prove eligibility for diversion. (See § 1001.36, subd. (b)(3).) If the court is required to unilaterally consider diversion, then a "request for diversion" is without substance.

Finally, Banner states, "[I]f the Legislature intended for the defendant to make a request for pretrial diversion, the Legislature would have included such a requirement in the statute."[8] But the Legislature clearly did not mandate courts to sua sponte consider mental health diversion in every case. It could have simply included such a requirement in the statute if that was its intent; it did not.

In our view, the Legislature crafted a scheme wherein the diversionary interest originates in the defendant or someone other than the defendant, e.g., counsel,[9] the

---

[7] This point is based on the canon courts " ' "must harmonize 'the various parts of a statutory enactment … by considering the particular clause or section in the context of the statutory framework as a whole.' " ' " (*People v. Lewis* (2021) 11 Cal.5th 952, 961.)

[8] This argument is based on a commonsense maxim. (See, e.g., *People v. Hillhouse* (2003) 109 Cal.App.4th 1612, 1619 [" 'Had the Legislature intended otherwise, it plainly knew how to do so.' " ].)

[9] In an ideal world, counsel and defendant's views on diversion would perfectly align. In reality, those views might differ even when counsel believes he or she is acting in the client's best interests.

prosecutor,[10] or the judge.[11]  In those situations, a defendant justifiably professing his or her innocence might well decline diversion and choose instead to put the People to their burden of proof.  Nowhere, however, does the scheme mandate a sua sponte duty for trial courts to consider mental health diversion.  After all, a defendant (or his or her counsel) is often best positioned to know whether mental health diversion is an appropriate outcome.  (See *People v. Graham* (2021) 64 Cal.App.5th 827, 835, review granted Sept. 1, 2021, S269509 ["the onus is placed on the defendant to raise the issue of diversion"].)

Even if we assume trial courts had a sua sponte duty to consider mental health diversion, Banner would still not prevail.  "The California Constitution prohibits a court from setting aside a judgment unless the error has resulted in a 'miscarriage of justice.' " (*In re Celine R.* (2003) 31 Cal.4th 45, 59—60.)  This means reversal is appropriate "only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error." (*Ibid.*)  We do not.

We reach this conclusion because the trial court here did not believe Banner's mental health was a significant factor in the commission of *this* crime.  Such belief is required to grant diversion.  (§ 1001.36, subd. (b)(1)(B).)  The limited remedy described in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*) is thus inapplicable.

In *Frahs,* the Supreme Court held a limited remand is appropriate "when, as here, the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion — the defendant suffers from a qualifying mental disorder …." (*Frahs, supra,* 9 Cal.5th at p. 640.)  But *Frahs* was written in context of its application to sentencing hearings occurring before

---

[10] A prosecutor might, for example, believe diversion is a suitable resolution after garnering further information not readily available when the charges were filed.

[11] A scenario in which this could occur is where the defendant is mentally incompetent to stand trial.  Section 1001.36 addresses this possibility.  (See § 1001.36, subd. (b)(1)(D) [consent requirement dispensed with when defendant mentally incompetent].)

section 1001.36 was enacted. (*Id.* at p. 638 ["defendant was tried and convicted before section 1001.36 became effective"].) Moreover, *Frahs* itself recognizes the procedural limits of its holding. (*Id.* at p. 640 [not addressing questions not presented].)

To be clear, the record here contained significant evidence of Banner's mental illness, which was discussed at the sentencing hearing.[12] Based on the entire record, however, the court could reasonably conclude Banner's mental health was not a significant factor underlying the crime.

To illustrate, Banner testified at the trial and claimed he was innocent. He again professed innocence in his posttrial statutory probation interview (§ 1203). During sentencing, he made no statement. His interview with a police officer at the crime scene was coherent. No witness believed Banner was mentally ill during the incident. Put simply, nowhere in the record does evidence appear Banner's mental illness played a significant role in this crime.

We point this out not to discredit or disparage Banner in any way, and certainly not to place upon him or any defendant a burden to testify or make any statement explaining why his or her mental illness culminated in a specific incident. We point it out only to explain how the trial court reasonably could conclude Banner's illness was in "abeyance at the time …." (*People v. Oneal* (2021) 64 Cal.App.5th 581, 589 ["trial court's factual findings [upheld] if supported by substantial evidence"].)

It is true Banner was found mentally incompetent prior to his trial. But the court did not declare a doubt as to Banner's competency until nearly seven full months after his arrest. (See § 1368.)

---

[12] As discussed in detail below, Banner's counsel advocated for a sentence involving nonstatutory mental health programming in lieu of incarceration.

In sum, a trial court "may" grant mental health diversion after first broaching its prospects with the parties,[13] but there is no sua sponte duty to do so in the absence of a request by the defendant or any other person.[14] Nonetheless, we join our colleagues in "emphasiz[ing] that our trial courts must give serious consideration to this critical alternative, for the good not just of mentally ill offenders but, ultimately, society at large." (*People v. Williams* (2021) 63 Cal.App.5th 990, 1005; *People v. O'Hearn* (2020) 57 Cal.App.5th 280, 300-301.) In conclusion, the trial court here did not err in pronouncing judgment without first explicitly contemplating diversion absent a request from Banner.[15]

## II. Banner Cannot Prove Ineffective Assistance of Counsel

This claim requires us to determine whether Banner received constitutionally ineffective counsel. Initially, he complained counsel was ineffective "because any constitutionally effective defense counsel … would have requested mental health diversion under section 1001.36."

In the rehearing petition, Banner argues there was no opportunity for him to present any evidence proving he was eligible for diversion, "such as a medical expert opinion that may have explained how his mental disorders … played a significant factor in his attempt to 'rob' a … restaurant with a toy gun." He asserts "[i]f [we] had properly understood the [law], [we] would have recognized that, at a diversion eligibility hearing

---

[13] The court must still comply with all statutory requirements, particularly "considering the positions of the defense and prosecution …." (§ 1001.36, subd. (a).)

[14] Other statutes are similarly structured. (E.g., § 1385 [court may dismiss action on its own or on application of prosecutor]; see *People v. Lee* (2008) 161 Cal.App.4th 124, 129 ["no sua sponte duty" arises under section 1385].)

[15] Whether Banner's request for diversion at sentencing would be timely is currently under review by the Supreme Court in *People v. Braden* (2021) 63 Cal.App.5th 330*,* review granted July 14, 2021, S268925. Because that question is not raised in this case, we neither address it nor express a view on its resolution.

on remand, there is a reasonable probability that [he] could demonstrate through a medical expert opinion that his mental illness" made him eligible for diversion.

The People originally responded Banner "cannot establish … ineffective assistance of counsel" "[b]ecause the record does not establish [he] was eligible for pretrial mental health diversion …."  In response to the argument on rehearing, the People point out Banner's argument there is a reasonable probability the court would grant diversion after considering an expert medical opinion "is based on pure speculation."

We again agree with the People.  Banner fundamentally misunderstands the standard of review, which requires us to analyze prejudice based on the record.  The record does not contain sufficient evidence to conclude the court would have granted diversion.

### A.  Additional Background

At a pretrial hearing approximately seven months after the crime occurred, Banner's counsel declared a doubt regarding Banner's mental competency to stand trial.  (§ 1368.)  Just before trial, counsel indicated the possibility of calling an expert witness to describe Banner's mental state during the incident.[16]

During sentencing, counsel sought local mental health court as an alternative to imprisonment.  Counsel also argued Banner's testimony, i.e., disclaiming responsibility, was a "symptom of his mental illness."  As noted above, the court recognized Banner suffered from "mental health issues" but believed it "was somewhat in abeyance at the time of the situation for whatever purpose or whatever reason."

### B.  Analysis

The Sixth Amendment guarantees the " 'right to the effective assistance of counsel.' "  (*Strickland v. Washington* (1984) 466 U.S. 668, 685—686.)  " '[T]o establish

---

[16] That witness ultimately did not testify.

a claim of ineffective assistance of counsel, [Banner] bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective standard of reasonableness [¶] ... under prevailing professional norms." [Citations.] Unless [he] establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.] If [he] meets the burden of establishing that counsel's performance was deficient, he … must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 125 (*Bell*).)

"The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." (*In re Cox* (2003) 30 Cal.4th 974, 1019—1020 (*Cox*); *People v. Carrasco* (2014) 59 Cal.4th 924, 982.) We follow that course here.

At first glance, the record is unfavorable to counsel. For example, requesting informal mental health treatment but not statutory mental health diversion appears inconsistent. It is possible, however, counsel believed Banner did not meet each criterion for eligibility, specifically the fact mental illness must significantly underlay the crime.[17]

---

[17] This is true notwithstanding counsel's sentencing argument Banner's mental illness was the reason he denied involvement in the crime.

Most importantly, it does not appear Banner was prejudiced. Again, the trial court did not believe Banner's mental illness played a significant role in this crime. Without believing mental illness was a "significant factor" in the crime, the court could not grant diversion. (§ 1001.36, subd. (b)(1)(B).)

Banner's reference to an expert medical opinion is unavailing. There is no such expert medical opinion in either the trial or appellate record. Essentially, he asks us to presume his mental illness was a significant factor in the crime based on an expert opinion that does not exist. This we cannot do. We must rest our analysis not on a hypothesis but on evidence in the record.

To the extent Banner complains he had no opportunity to develop the record, he is mistaken. Section 1001.36 was the law at the time he was sentenced. There were hundreds of pages of records relating to his mental illness including mental competency evaluations. His attorney did in fact offer mental health as a mitigating factor. The record was rife with information relating to Banner's mental health. The court simply disagreed it was a significant factor in this crime.[18]

We conclude Banner has failed to discharge his burden to prove prejudice because he cannot prove the court would have found him eligible for diversion. The ineffective assistance claim fails.

## III. Crime Sufficiently Proven

Banner believes the evidence insufficiently proved attempted robbery against the second employee. He argues the evidence "does not support the reasonable inference that [he] specifically intended to commit a robbery" against the second employee because he "never took any sort of action against her, such as demanding money …, pointing the apparent gun …, or threatening to shoot her."

---

[18] We emphasize this is not a case in which the parties or court arguably were unaware of mental health diversion. Indeed, the trial court explicitly mentioned the statute during the sentencing hearing.

The People state "it is reasonably inferable that [Banner] intended to rob anyone and everyone who had access to and control over the money when he entered the store." They assert " 'multiple convictions of robbery are proper if force or fear is applied to multiple victims in joint possession of the property taken.' " (*People v. Scott* (2009) 45 Cal.4th 743, 750 (*Scott*).)  We agree.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  …  We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

" 'To constitute robbery the property must be removed from the possession and immediate presence of the victim against his will, and such removal must be by force or fear.' " (*People v. Nguyen* (2000) 24 Cal.4th 756, 761.)  "[N]either ownership nor physical possession is required to establish the element of possession for the purposes of the robbery statute." (*Scott, supra,* 45 Cal.4th at p. 749.)  "Two or more persons may be in joint constructive possession of a single item of personal property, and multiple convictions of robbery are proper if force or fear is applied to multiple victims in joint possession of the property taken." (*Ibid.*)

" ' "[A] store employee may be the victim of a robbery even though he is not its owner and not at the moment in immediate control of the stolen property." ' " (*Scott, supra,* 45 Cal.4th at p. 751.)  "[A]ll employees on duty have constructive possession of

13.

their employer's property and may be separate victims of a robbery."[19] (*People v. Bradford* (2010) 187 Cal.App.4th 1345, 1349.)

With these principles in mind, we conclude the evidence readily supports the jury's verdict. The evidence disclosed Banner entered the restaurant and stood in line for several minutes while observing two employees assist multiple customers. When Banner reached the front of the line, he produced a toy firearm and demanded money. At that point, both employees were in close proximity to one another and the cash register.

"As a matter of common knowledge and experience, those who commit robberies are likely to regard all employees as potential sources of resistance …." (*Scott, supra,* 45 Cal.4th at p. 755.) The jury could reasonably infer Banner was acutely aware *two* employees were obstacles in his path. The jury could also reasonably conclude he waited for the employees to converge before attempting the robbery in an effort to maximize control and success. This is consistent with an intent to rob *both* employees. Accordingly, the evidence sufficiently proved both attempted robberies.

## IV. Fines and Fees Properly Imposed

As pertinent, the trial court imposed a $300 restitution fine, an $80 operations fee, and a $60 conviction fee as part of the judgment.[20] Banner did not object to their imposition.

---

[19] Although not in issue here, we make clear a "long line of California cases … have found evidence sufficient to establish that employees working at a business premises were in constructive possession of the employer's property during a robbery, based upon their status as employees and *without examining whether their particular duties involved access to or control over the property stolen*." (*Scott, supra,* 45 Cal.4th at p. 752, emphasis added.) This is so "because of their relationship to the property or its owner, [employees] have the right to resist the taking …." (*Id.* at p. 758.) That was borne out in this case when the second employee resisted the taking by fleeing and notifying law enforcement.

[20] These obligations were imposed pursuant to sections 1202.4, 1465.8, and Government Code, section 70373, respectively.

"In general, a defendant who fails to object to the imposition of fines, fees, and assessments at sentencing forfeits the right to challenge those fines, fees, and assessments on appeal." (*People v. Greeley* (2021) 70 Cal.App.5th 609, 624.) This is particularly true in cases like this where sentencing occurred *after* the *Dueñas* court declared a constitutional right to have courts determine ability to pay prior to imposing mandatory fines and fees.[21] (*Greeley, supra,* at p. 624.) Because Banner did not object, we conclude he forfeited this claim.

Alternatively, Banner contends his counsel was ineffective for failing to object post-*Dueñas*. He bears the burden to demonstrate " ' " 'there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. … " ' " … Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." [Citation.] Defendant's burden is difficult to carry on direct appeal …: " 'Reviewing courts will reverse … [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission.' " ' " (*People v. Vines* (2011) 51 Cal.4th 830, 876.)

Based on the record, counsel may well have believed an objection to these financial obligations was futile. The only evidence relative to ability to pay disclosed Banner's assets and net monthly income exceeded the total obligation imposed by the

---

[21] The decision in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 is the basis for Banner's claim. It was published nearly seven full months prior to Banner's sentencing hearing.

court.[22] For these reasons we cannot find counsel ineffective nor can we find the court erred in its judgment.[23]

## V. Habeas Petition

In the habeas petition, Banner asserts his trial counsel was ineffective because she did not request diversion due to inadequate funding "and the Public Defender's Office had been unsuccessful in requesting diversion in other cases."[24] He argues "[i]t was incumbent upon trial counsel to request diversion and have the trial court improperly deny the request on the basis of inadequate funding." He concludes, "there is a reasonable chance that the trial court would have granted diversion if trial counsel had made the request …." We disagree.

As recited above, to prevail on an ineffective counsel claim, Banner must prove prejudice. (*Bell, supra,* 7 Cal.5th at p. 720.) We need not determine if trial counsel was deficient because Banner cannot prove prejudice. (See *Cox, supra,* 30 Cal.4th at pp. 1019—1020.) Were we to assume trial counsel's rationale was deficient, it does not change the fact the trial court did not believe Banner's mental illness was a significant factor in these attempted robberies. Nothing in the trial record or in the habeas petition establishes a reasonable probability the trial court would have granted diversion. (See

---

[22] The income statistics are contained in Banner's postconviction probation interview. (§ 1203.) The fines and fees imposed reflect the statutory minimum.

[23] To the extent Banner claims the fines and fees were constitutionally excessive, we disagree. Four hundred and forty dollars is not excessive for attempting to rob multiple people with a toy firearm. (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728 [proportionality is the touchstone of Eighth Amendment analysis].)

[24] This assertion is based on an asserted conversation between Banner's appellate counsel and Banner's trial counsel. Of course, we cannot pass upon the credibility of this assertion. Ordinarily, an evidentiary hearing is necessary to resolve credibility. Here, however, an evidentiary hearing is unnecessary because Banner is not entitled to relief even if appellate counsel's assertion is true and accurate.

*ante*, Discussion, II. B., § 1001.36, subd. (b)(1)(B).)  For that reason, the petition lacks merit.

## VI.  AB 124 Applies Retroactively and Justifies Remand

AB 124, enacted after the sentencing hearing in this case, recently amended section 1170.  As relevant, it now reads:

> "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:

> "(A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."  (§§ 1170, subds. (b)(6) & (b)(6)(A).)

Banner claims this sentencing presumption applies retroactively on appeal.  The People agree, but argue remand is futile for two reasons:  (1) because mental illness itself does not equal "trauma" and (2) the trial court did not otherwise believe Banner's mental illness was a "contributing factor in the commission of the offenses."

We agree with the parties AB 124 applies retroactively to nonfinal cases on direct appeal.  We also find it warrants remand for a new sentencing hearing in this case for the reasons discussed below.

### A.  Retroactivity

"[A]bsent evidence to the contrary, [we presume] the Legislature intended amendments to statutes that reduce punishment for a particular crime to apply to all whose judgments are not yet final on the amendments' operative date."  (*People v. Lopez* (2021) 73 Cal.App.5th 327, 344.)  This includes "statutes that merely ma[k]e a reduced punishment *possible*."  (*Frahs, supra,* 9 Cal.5th at p. 629.)  Because AB 124 and its

17.

implementation are silent regarding retroactivity, it *does* apply to all nonfinal cases on appeal. (*Lopez, supra,* at p. 344.; *In re Estrada* (1965) 63 Cal.2d 740, 744-746.)

## B. Analysis

Our analysis proceeds in two steps. First, we examine the statute and conclude psychological trauma stemming from mental illness properly invokes the lower term presumption in section 1170, subdivision (b)(6). Second, we apply the statute to the facts in this case and hold the trial court's findings do not preclude the possibility it might conclude psychological trauma based on mental illness was a factor contributing to Banner's crime.

### i. Psychological Trauma and Mental Illness

As quoted above, the new AB 124 sentencing presumption applies when a "person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence," and that trauma "was a contributing factor in the commission of the offense …." (§§ 1170, subds. (b)(6) & (b)(6)(A).) In opposing remand for a new sentencing hearing, the People argue "mental illness [does not] constitute psychological trauma." While perhaps literally true, we believe it strains credulity to conclude mental illness cannot result in psychological trauma.

The criminal justice system is saturated with mentally ill persons. To California judges regularly presiding in criminal courtrooms, it takes no special insight to appreciate a correlation between mental illness, psychological trauma, indigency, and crime.

More directly, the statute's plain language states trauma is "*not* limited to abuse, neglect, exploitation, or sexual violence." (§ 1170, subds. (b)(6)(A), emphasis added.) While the People prefer to construe the statute to apply to "experiences" other than mental illness, it simply is not so limited. Because the statute's language is plain and unambiguous, " 'our inquiry ends.' " (*In re D.B.* (2014) 58 Cal.4th 941, 945; *People v. Dieck* (2009) 46 Cal.4th 934, 939 [" ' "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute

18.

governs." ' "].) Accordingly, we hold psychological trauma based on mental illness may be a circumstance qualifying for the lower term presumption in section 1170, subdivision (b)(6). To be clear, we do not hold mental illness alone qualifies for the lower term presumption. Psychological trauma must attend the illness, and *that* trauma must contribute to the crime under section 1170, subdivision (b)(6).

### ii. Contributing Factor

The remaining issue is whether remand is justified in this case. The answer here turns on whether the court already concluded mental illness was not a contributing factor to the crime.

The People assert "the record clearly indicates the trial court determined [Banner's] mental illness was not a contributing factor in the commission of the offenses." Banner counters "a 'contributing factor' is something less than a 'significant factor.' Therefore, even if [his] mental illness was not a 'significant factor' in [the] crime, it could have been a 'contributing factor' in the crime." Banner has the better argument. We agree a contributing factor (§ 1170, subd. (b)(6)) is less than a significant factor (§ 1001.36, subd. (b)(1)(B)). The difference is inherent in the respective statutes.

Under section 1001.36 mental health diversion, both conviction and imprisonment are entirely avoided. Under section 1170, subdivision (b)(6), neither conviction nor imprisonment are avoided, but instead there is a rebuttable presumption favoring a lower term prison sentence. A standard resulting in neither conviction nor imprisonment is properly more onerous than a standard that potentially mitigates a prison sentence.

Because the respective statutory standards are different, the trial court's conclusion Banner's mental illness was not a *significant* factor in the crime does not subsume a finding it was a lesser *contributing* factor. Hypothetically, a court could find psychological trauma induced by mental illness a contributing factor in a crime notwithstanding the fact the person was lucid at the time of the crime. (Cf. *Frahs, supra,* 9 Cal.5th at pp. 638-639.)

19.

We recognize the trial court did not formally find Banner's mental illness a factor in mitigation at the sentencing hearing.[25] The Rules of Court list "suffering from a mental or physical condition that significantly reduced culpability for the crime" as a mitigating factor. (Cal. Rules of Court, rule 4.423, subd. (b)(2).) The Supreme Court has made clear mental illness may underlay a crime without *also* significantly reducing culpability. (*Frahs, supra,* 9 Cal.5th at pp. 638-639.) Accordingly, not finding mental illness a mitigating factor under the Rules of Court does not preclude a separate finding psychological trauma is a contributing factor to the crime under section 1170, subdivision (b)(6).

In a similar vein, we generally expect arguments developing mental illness as mitigation to appear in the record in one form or another. Classic examples include plea negotiations, trial proceedings, and sentencing hearings. We believe, however, neither Banner nor the court had a meaningful incentive to assess whether mental illness was a limited but nonetheless "contributing factor" in the crime. (Cf. *Frahs, supra,* 9 Cal.5th at pp. 637-638 [record is likely incomplete relative to statutory factors enacted after judgment pronounced].)

In these circumstances, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion" under the law as it now exists. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) The record here does not make it clear the court would have selected the middle term when pronouncing judgment had AB 124 been in effect at the time. A remand is warranted. We express no opinion on whether Banner's mental illness was in fact a contributing factor to the crime, or whether the "the lower term would be contrary to the

---

[25] The court recognized the enactment of mental health diversion itself as "weigh[ing]" in mitigation and "considered that" at the sentencing hearing. But it did not otherwise state Banner's mental illness was in any form a mitigating factor. The postconviction probation report (§ 1203) did not list mental illness as a mitigating factor.

interests of justice ….” (§ 1170, subd. (b)(6).) Those are questions best left to the trial court to answer in the first instance.

## DISPOSITION

The case is remanded and the trial court is directed to resentence Banner consistent with section 1170, subdivision (b)(6). The judgment is otherwise affirmed.

The petition for writ of habeas corpus consolidated with this appeal (previously numbered F081144) is denied.

SNAUFFER, J.

I CONCUR:

DE SANTOS, J.

21.

DETJEN, Acting P. J., Concurring and Dissenting.

I concur in the majority's conclusions:  (1) that Penal Code[1] section 1001.36 does not confer a sua sponte duty on trial courts to consider mental health diversion (maj. opn., *ante*, at p. 4); (2) that Lamonte Shermale Banner (defendant) failed to meet his burden of establishing that trial counsel's failure to request mental health diversion pursuant to section 1001.36 resulted in prejudice (maj. opn., *ante*, at pp. 11, 12); (3) that the evidence sufficiently proved defendant intended to commit robbery against each employee (maj. opn., *ante*, at p. 14); (4) that defendant forfeited his claim that the trial court erred in imposing the fine and fees at sentencing (maj. opn., *ante*, at pp. 2, 15); (5) that defendant failed to meet his burden of establishing trial counsel was ineffective for failing to object to the imposition of fines and fees at sentencing (maj. opn., *ante*, at pp. 15-16); and (6) in denying defendant's habeas petition (maj. opn., *ante*, at pp. 16-17).

I respectfully dissent, however, from the majority's conclusion that evidence of mental illness in the trial court record requires remand for resentencing under newly enacted subdivision (b)(6)(A) of section 1170.

In *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), our Supreme Court concluded that a statute, which "by design and function provides a possible ameliorating benefit for a class of persons," is retroactive to all persons whose judgments are not yet final at the time the statute took effect.  (*Id*. at p. 624.)

I agree that subdivision (b)(6)(A) of section 1170, which was added by Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Assem. Bill No. 124)[2] and became effective

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

[2] During the 2021-2022 legislative term, three bills proposing changes to section 1170 in a variety of ways were introduced.  They were Assembly Bill No. 124 (Stats. 2021, ch. 695, § 5), Assembly Bill No. 1540 (Stats. 2021, ch. 719, § 2), and Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3).  All three bills were passed by the Legislature in September 2021, and approved by the Governor and filed with the Secretary of State on October 8, 2021.  Senate Bill No. 567 bears the highest chapter number and is presumed to be the last of the three approved by the Governor.  (Gov. Code, § 9510.)  As such,

January 1, 2022, applies retroactively to defendant's judgment. Just as with the amendments made by Proposition 57 (the Public Safety and Rehabilitation Act of 2016),[3] and with the newly enacted section 1001.36,[4] this amendment to section 1170 provides an ameliorating benefit for a class of persons. I also agree that remand is warranted *when* the evidence appears to show a defendant is a member of that class of persons. (*Frahs*, *supra*, 9 Cal.5th at p. 624.) There is no evidence in the record, however, that defendant comes within that class of persons.

The subdivision states: "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6)(A).)

---

Senate Bill No. 567 prevails over Assembly Bill No. 124. (Gov. Code, § 9605, subd. (b).) To the extent there are conflicts between the three bills, Senate Bill No. 567 takes precedence. (*In re Thierry S.* (1977) 19 Cal.3d 727, 738-739.) As to subdivision (b)(6)(A) of section 1170, however, the substantive language in Assembly Bill No. 124, Senate Bill No. 1540, and Senate Bill No. 567 are not in conflict. For ease of discussion, I refer to Assembly Bill No. 124 rather than Senate Bill No. 567.

[3] "Proposition 57 prohibits prosecutors from charging juveniles with crimes directly in adult court. Instead, they must commence the action in juvenile court. If the prosecution wishes to try the juvenile as an adult, the juvenile court must conduct what we will call a 'transfer hearing' to determine whether the matter should remain in juvenile court or be transferred to adult court. Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult." (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303 [referring to Welf. & Inst. Code, § 707, subd. (a)].)

[4] "In June 2018, the Legislature enacted . . . sections 1001.35 and 1001.36, which created a pretrial diversion program for certain defendants with mental health disorders." (*Frahs*, *supra*, 9 Cal.5th at p. 624, fn. omitted, citing Stats. 2018, ch. 34, § 24.)

2.

In determining the Legislature's intent, we turn first to the words of the statute. When the statutory language is clear and unambiguous, it establishes what was intended by the Legislature. (*People v. Statum* (2002) 28 Cal.4th 682, 689-690.) The plain language of the amended statute provides no support for the majority's conclusion.

The statute does not list mental illness in the identified class of persons. It lists: "[P]sychological . . . trauma, including, . . . abuse," "psychological . . . trauma, including, . . . neglect," "psychological . . . trauma, including, . . . exploitation," and "psychological . . . trauma, including, . . . sexual violence." (§ 1170, subd. (b)(6)(A).) It does not read, psychological trauma, *including mental illness*. If it did, the statute would list mental illness among the conditions that constitute psychological trauma. The majority recognizes this when they state they "do not hold mental illness alone qualifies for the lower term presumption." (Maj. opn., *ante*, at p. 19.)

The majority then concludes that "psychological trauma stemming from mental illness" (maj. opn., *ante*, at p. 18), and "psychological trauma based on mental illness" (maj. opn., *ante*, at pp. 18, 19), and "[p]sychological trauma [that] attend[s] [mental] illness" (maj. opn., *ante*, at p. 19), requires remand for resentencing under section 1170, subdivision (b)(6)(A) opining that "it strains credulity to conclude mental illness cannot result in psychological trauma." (Maj. opn., *ante*, at p. 18.)

I do not disagree that psychological trauma can "stem[] from," be "based on," or "attend" mental illness. The problem is there is *no* evidence in the record of psychological trauma. At oral argument, defendant agreed with this conclusion. And this conclusion is borne out by what is in the record. At sentencing, defense counsel provided the trial court with mental health records relating to defendant. Additionally, there were competency reports in the court file generated in an earlier Evidence Code section 1370 evaluation, as well as associated state hospital commitment information. In his briefing to this court, defendant points to his diagnosis of schizoaffective disorder. The trial court found defendant had mental health issues. It stated:

3.

"I think the records are pretty clear that [defendant] certainly suffers from certain issues, including obsessive compulsive disorder, at the very least. There have been some other diagnosis [*sic*] that have been not as consistent, but that diagnosis I have seen throughout the documents that were provided."[5]

In *Frahs*, our Supreme Court concluded "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing [was] warranted [because] the record affirmatively disclose[d] that the defendant appear[ed] to meet at least the first threshold eligibility requirement for mental health diversion—[he] suffer[ed] from a qualifying mental disorder." (*Frahs*, *supra*, 9 Cal.5th at p. 640.) Here, unlike in *Frahs*, the record not only fails to affirmatively disclose that defendant is in the class of persons covered by the amendment made to section 1170, but the record is devoid of any evidence he is. In reaching a decision on appeal, an appellate court is governed by the record. (*Oldenkott v. American Electric, Inc.* (1971) 14 Cal.App.3d 198, 207.) "We must rest our analysis not on a hypothesis but on evidence in the record." (Maj. opn., *ante*, at p. 12.)

By remanding for resentencing based on Assembly Bill No. 124 when there is evidence of mental illness, but no evidence of psychological trauma, because with mental illness there *may be* psychological trauma, the majority broadens the class of persons beyond those listed in the plain language of the statute. "[E]xcept in the most extreme cases where legislative intent and the underlying purpose are at odds with the plain language of the statute, an appellate court should exercise judicial restraint, stay its hand,

---

[5] I disagree with the majority's assertion that the trial court "did not formally find [defendant's] mental illness a factor in mitigation at the sentencing hearing." (Maj. opn., *ante*, at p. 20.) The record clearly shows the trial court did find defendant's mental illness to be a factor in mitigation. It stated: "I will also note that it may not serve as an official circumstance in mitigation, but I will note that under Penal Code [s]ection 1101.—think it's 34, it is a mental health diversion program—or statute that has now been passed by the state [L]egislature and is law, and so I do consider that while maybe not an official factor in mitigation, *it certainly weighs, I think, in mitigation and I have considered that*." (Italics added.)

4.

and refrain from rewriting a statute to find an intent not expressed by the Legislature." (*Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1700.)  " 'We may not, . . . rewrite the law or give the words an effect different from the plain and direct import of the terms used.'  [Citation.]" (*California State University, Fresno Assn., Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 268.)

The judicial construction given to subdivision (b)(6)(A) of section 1170 by the majority swallows the rule and leads to absurd results.  Given their construction, it would follow that:  a defendant with a prior prison term should have his or her case remanded for resentencing because psychological trauma could well "stem[] from" such an experience; or, when evidence in the trial court indicated a defendant took medication for back pain, the case should be remanded for resentencing as physical trauma may "attend" such pain; or, when evidence suggests a defendant suffered the loss of a parent in childhood, remand for resentencing should occur as childhood trauma may be "based on" such an event.

I decline the majority's invitation to add a group of persons—in this case, defendants who have a mental illness, but no evidence of psychological trauma—to the class of persons designated by the Legislature to benefit from the subdivision of section 1170 added by Assembly Bill No. 124.  To do so violates established rules of statutory construction and canons of appellate review.  I would affirm the judgment in its entirety and not remand for resentencing.


DETJEN, Acting P. J.


5.